# IRA J. HUMPHREY, *et al.*

## *vs.*

## •CYPRIEN BUISSON.

A guardian, under the statutes of this territory and state, had, and has, power to dispose of the personal estate of his ward to a *bona fide* purchaser, without obtaining license therefore from the court. If he can so sell and transfer a note or debt belonging to the ward, he can do the same with a mortgage given to secure such note or debt.

The material allegations of the complaint in this action were substantially, that the plaintiffs are the owners of certain lands therein described; that one John C. Goss, plaintiffs' grantor, before conveyance to them executed his promissory note and a mortgage upon the said lands to secure its payment to the defendant, then a minor; that Alexis Bailly, the guardian of the defendant, sold and transferred said note to the firm of Downer & Prindle; that the plaintiffs paid the note to Downer & Prindle, and the same was surrendered up and cancelled, but the mortgage was not cancelled of record, and that the plaintiff, now of age, has commenced to foreclose said mortgage by advertisement. The plaintiffs ask to have such foreclosure proceedings enjoined and that the defendant be required to execute a satisfaction of the mortgage. The defendant demurred to the complaint, insisting that a guardian of a minor has no right, without license or order of the court, to sell and transfer a mortgage belonging to the minor, and as no such order or license is alleged, the complaint is

fatally defective. The demurrer was overruled, and the defendant appeals from the order of the district court of Wabasha county overruling the same, to this court.

SHILLOCK & GRETHEN, for Appellant.

S. L. CAMPBELL & SON, for Respondents.

*By the Court.*—RIPLEY, CH. J.—It appears by the complaint demurred to, that about the first day of April, 1861, one Goss executed to the defendant, who was then a minor, his promissory note for three hundred dollars, and to secure the payment thereof, a mortgage upon certain real estate. One Alexis Bailly was then the legally appointed guardian of said minor, and had full care and custody of his estate, and while still such guardian, thereafter sold and transferred said note and mortgage to Downer & Prindle. The sale must be taken to have been *bona fide.* The defendant's position is, however, that the guardian of a minor has no authority without a license or order from the probate court to sell and transfer a mortgage belonging to the minor.

But the defendant cannot separate the mortgage from the note, the security from the debt it was given to secure. "We regard the doctrine as settled by the great weight of authority, that a mortgage is a mere security for the debt, and the debt draws to it the mortgage as its incident." *Hill v. Edwards,* 11 *Minn.* 22, *p.* 29.

"An assignment of the debt draws the mortgage security after it, as a consequence, and as being appurtenant to the debt. The assignment of the interest of the mortgagee in the land without an assignment of the debt, is considered to be without meaning or use. This is the general language of the courts of law, as well as of the courts of equity;

and the common sense of the parties, the spirit of the mortgage contract, and the reason and policy of the thing, would seem to be with the doctrine." 4 *Kent Com.* 194, *and authorities cited in note* 6 ; *Johnson v. Lewis*, 13 *Minn.* 364.

The defendant quotes from *Hilliard on Mortgages* as follows : "It has been held in Massachusetts, that the estate of a deceased mortgagee in the mortgage, though not strictly real property, so far partakes of that character as to require a license from the probate court to justify a sale of it by the administrator." *Vol.* 1, *p.* 257–8. The case referred to by the author does not support the text. The decision simply construes *Rev. St., ch.* 65, *s.* 11, 14, holding that thereunder the sale by an administrator of real estate mortgaged to the intestate, and of the debt secured by the mortgage, is required to be by license of the probate court, obtained in the manner required for the sale of real estate, although neither the intestate nor the administrator has taken possession of the estate. *Ex parte Blair*, 13 *Met.* 126.

The court say, as quoted by appellant, that the language of sec. 14, viz. : " any real estate so held by any executor, or administrator in mortgage * * * may be sold * * in the same manner as any real estate of which the deceased person died seized," etc., is broad enough in its terms to cover all real estate mortgaged by the testator.

But it gives the reason, viz. : that the right to take possession, by open and peaceable entry, or by action, of the premises, if the deceased had not obtained possession in his life time, given by section 11 to the administrator, implies that he " has a qualified seizin and holds the estate."

Such statutes and such construction are perfectly intelligible in a state, in which, as in Massachusetts, the law was, that as between mortgagor and mortgagee, the legal freehold passes by the deed of the former to the latter, and that, unless restricted by the

terms of the deed, the mortgagee may enter at once upon the premises; nor would he be liable in trespass to the mortgagor for making such entry, or exercising any ordinary acts of ownership upon the premises. 1 *Wash. Real Prop.* 514, *B.* 1, *ch.* 16, *s.* 7.

But they have no application here. Our statutes treat a mortgage as a lien on the land, and expressly provide that it shall not be deemed a conveyance so as to entitle the mortgagee to recover possession without a foreclosure. *Pub. Stat. ch.* 9, *s.* 101; *ch.* 64, *s.* 11; *Gen. St. ch.* 11, *sec.*152; *ch.* 75, *sec.* 11. And it is well settled in this state that a mortgage is a *security* only, and that until foreclosure the legal title to lands mortgaged remains in the mortgagor. *Berthold v. Holman,* 12 *Minn.* 335.

The appellant also quotes from *Chapman vs. Tibbetts,* 33 *N. Y.* 290, as follows:

" There is a class of securities, the property of minors, over which the guardian has no such control, (*i. e.* to collect and receive moneys due to the minors, whether secured on mortgage or otherwise, and execute discharges and receipts therefor,) and these are; the proceeds of real estate and moneys; the proceeds of real converted into personal estate under the decree and order of the court. Such proceeds are still regarded and treated as real esatate, and are not subject to the disposition of the general guardian without the special order of the court for that purpose." But as this is not such a case, such quotation has no bearing here, except in so far as it implies that other securities are subject to the guardian's general power of control. No reason applies, therefore, why, if the guardian could sell and transfer this note, he could not also assign the security.

The question, then, is as to the power of the guardian in this state to dispose of the personal estate of his ward to a *bona fide* purchaser, without first obtaining license therefor.

There is no doubt about his power to do so, if the statutes do not restrict him. "The guardian is held in this country to have only a naked authority, not coupled with an interest. His possession of the property of his ward is not such as gives him a personal interest, being only for the purpose of agency. But, for the benefit of his ward, he has a very general power over it. He manages and disposes of the personal property at his own discretion, although it is safer for him to obtain the authority of the court for any important measure." 1 *Pars. on Cont. B.* 1, *ch.* 9, *sec.* 2.

So also Ch. Kent says: "He may sell the personal estate for the purpose of the trust without a previous order of the court." 2 *Kent Com., p.* 228. "I apprehend that no doubt can be entertained as to the competency of the guardian's power over the disposition of the personal estate, including the choses in action, as between him and the *bona fide* purchaser." *Field v. Schieffelin,* 7 *Johns. Ch.* 154.

It remains to be considered whether our statutes have altered the case in this respect. The appellant states that the sale was governed by the public statutes, *i. e.,* was made before the revision. The case does not show how the fact is, but as the provisions of the Public Statutes and General Statutes are identical, so far as the question is concerned, it is immaterial when the sale took place.

*Pub. Stat., ch.* 54, of "guardians and wards," seems (except *sec.* 9, which is here immaterial) to have been taken from the *Mass. Rev. Stat., ch.* 79 of "guardians and wards," with few changes, and none which are material in the present case. Most of the sections are taken *verbatim* from said *ch.* 79.

*Secs.* 18 *and* 19, upon which the appellant relies, are identical, in substance and effect, and nearly so in phraseology, with *secs.* 20 *and* 21 of said *ch.* 79, except that by the latter, the application therein mentioned may, in the first instance,

be either to the judge of probate, or to the supreme judicial court, which, in Massachusetts, is the supreme court of probate. It is also to be observed that this Massachusetts statute of "guardians and wards," in its essential features, (except said *secs* 20 and 21,) was passed in 1783, and 1806, and it must also be noted that in 1817, the legislature of Massachusetts enacted, that before any guardian shall transfer or draw from any loan office, bank, insurance office, or other corporation, any loan office certificate, or share in such bank, insurance office, or other corporation, or any stock (so called,) in any public fund belonging to the ward, it shall be the duty of such guardian to obtain license so to do from the judge of probate, etc. *Stat.* 1817, *ch.* 190, *s.* 35.

The supreme court of Massachusetts decided in 1824, that previous to such statute a guardian of a person *non compos mentis,* had a general authority to sell any personal property of his ward, and though he might improperly make a sale, a *bona fide* purchaser would have a good title. *Ellis v. Prop. of Essex Bridge, etc.,* 2 *Pick.* 245.

The court cite the provisions of 4*th section* of the *act of* 1783, (found in *secs.* 17 *and* 18 *of Mass. Rev. Stat.* and *secs.* 14 *and* 16, *Pub. Stat.*) that the guardian shall manage frugally and without waste and destruction the estate of the ward, apply the income to his support, pay debts out of the personal estate, and if that is unsufficient, out of the real estate on obtaining a license; also sell real estate for his support if necessary, and then proceed as follows: "Without doubt it was contemplated by the legislature, that the guardian had power by virtue of his office to sell the personal estate, for with that he has to pay the debts of his ward, and it is only when the real estate is wanted for that purpose, or for the support of the ward, that it is to be sold under a license of the court. It is true the guardian ought not to sell personal estate unless

Humphrey et al. v. Buisson.

the proceeds are wanted for the due execution of his trust, or unless he can by the sale produce some advantage to the estate, but having the power without obtaining any special license or authority, a title under him acquired *bona fide* by the purchaser will be good, for the purchaser cannot know whether the power has been executed with discretion or not, and the estate is always supposed to be secure by the bond given by the guardian for the faithful execution of his trust, and discreet management of the property. That this is the law in regard to personal property cannot be doubted."

As the sale then before the court was made prior to the said statute of 1817, it had no bearing thereon, but the court observe that its very enactment proves that before no such authority was required.

It is as true in this case as it was in that, that "it is only by referring to the nature and duties of the office, and from such implications as are effected by the statute, that any aid can be obtained in settling this question," (and with the exception of said *secs.* 18 and 19) the case is a direct authority that *Pub. Stat. ch.* 54 does not restrict the guardian's power aforesaid, over the personal estate.

It is true that by *sec.* 18, the guardian shall account for and dispose of the personal estate of the ward in like manner as is directed with respect to executors and administrators, and by *Pub. Stat., ch.* 45, *sec.* 4, *Gen. Stat., ch.* 54, *sec.* 4, upon rendering accounts by executors and administrators, it is provided that, " The probate court, on the application of the executor or administrator may, at any time, order the personal estate to be sold at private sale, or at public auction, when it appears to be necessary for the purpose of paying debts or legacies, or expenses of administration, or for the preservation of the property, or when it is requested by all the heirs residing in this state ; or the court may order such personal estate to be sold,

either at private sale or public auction, as the executor or administrator may find most beneficial." And the suggestion is, that under this section the executor or administrator cannot dispose of the personal estate without an order of the court, and, therefore, that a guardian cannot. But both at law and equity, the whole personal estate vests in the executor or administrator, and the general rule is that they have the power to dispose of it, (*Williams' Exrs. p.* 546,) and we think it evident that the statute neither does nor was intended to deprive them of it. An ancient and settled system ought not to be overturned except by clear, unambiguous and peremptory language. *Sedg. Stat. and Const. Law, p.* 318.

It does not purport to do so, and the power of the probate court to order a sale, in the cases specified, is not repugnant to, or inconsistent with the existence of such power of disposal in the executor or administrator. The rules of the common law are not to be changed by doubtful implication. *Wilbur vs. Crane,* 13 *Pick. p.* 290.

This conclusion, moreover, necessarily follows from an examination, without more, of *secs.* 2, 3 and 5.

The executor, etc., is to account for the property at the appraisal, except that he shall account for the excess, if he sells it for more, and shall not be accountable for the loss if he sells it for less, if it shall appear to be beneficial to the estate, and if he sells it under an order of the probate court he shall account for the same at the price at which it shall be sold. These provisions plainly contemplate and provide for accounting for the proceeds of sales made without an order of the court.

The same thing is true of a guardian under said *sec.* 18. If he is to account for the personal estate according to *Pub. Stat., ch.* 45, *Gen. Stat., ch.* 54, then the statute contemplates sales

by him of the personal estate without an order of court, and provides how he shall account therefor.

*Sec.* 19 *of Pub. Stat., ch.* 54, aforesaid, is as follows : " The judges of probate, in their respective counties, on the application of a guardian, or of any person interested in the estate of any ward, after such notice to all persons interested therein, as the judge of probate shall direct, may authorize or require the guardian to sell and transfer any stock in the public funds, or in any bank or other corporation, or any other personal estate or effects held by him, as guardian, and to invest the proceeds of such sale, and also any other moneys in his hands, in real estate, or in any other manner that shall be most for· the interest of all concerned therein ; and the said probate court may make such further orders, and give such directions, as the case may require for managing, investing and disposing of the estate and effects in the hands of the guardian." ·

The first branch of this section is very plainly not an implied prohibition of the power aforesaid of the guardian to make a sale of the personal estate to a *bona fide* purchaser.   It contemplates sales for reinvestment, while the guardian is bound to pay his ward's debts, and support him, out of the personal estate.   The last branch of the section *implies* the power of the guardian, in the absence of such order or direction, to manage, invest and dispose of the personal estate.   This section is first found in Massachusetts, in the revision, aforesaid, of 1836, where, as above stated, it appears as *ch.* 79, *sec.* 21, (prior *Stat.* 1817, *ch.* 190, *sec.* 35, being repealed,) and a similar provision was made as to trustees.  *Rev. Stat., ch.* 69, *sec.* 11. They were enacted upon the report of the commissioners appointed to revise the statutes.

The commissioners say " that guardians and trustees of all kinds are bound to exercise good faith and sound discretion in the discharge of their trusts, and they ought not, in general,

to be responsible for anything more. It seems, therefor, proper, on occasion of any doubt, and especially in case of a difference of opinion between the trustee and the persons interested in the estate, that he should be enabled to protect himself by obtaining the direction of some competent tribunal. If the trustee in any such case should not think proper to apply for the direction of the court, it may be done by any person interested in the estate. It may often happen that some particular disposition of the funds may be unsafe and improper, and such as the courts would not have sanctioned on a previous application, and yet it may be such as not to make the trustee liable for misconduct in the discharge of his trust. In such a case the loss or damage might be avoided by an application on the part of those who are interested in the estate. "These considerations, though not addressed to the legislature of Minnesota, nevertheless, in themselves, suggest a sufficient occasion for the passage by them of the section before us, without the necessity of supposing any intention to deprive the guardian of the power aforesaid.

The result of an examination of our statutes is, therefore, that they did not prohibit the sale and transfer of this note and mortgage.

Order appealed from affirmed.