## OLIVEROS *v.* THE STATE.

1. Where in the trial of one accused of embezzlement a certain receipt, signed by the accused, acknowledging the reception of the money, was offered in evidence by the State and objected to by the accused, and the trial judge, in giving his reasons for admitting it, expressed his opinion as to the effect and weight of such a receipt as evidence, this did not authorize the judge of his own motion, over the protest of the accused, to declare a mistrial and discharge the jury.

2. It was therefore error, when a mistrial had been so granted and the accused arraigned before a second jury, to overrule a plea of former jeopardy.

LAMAR, J. (with whom concurs CANDLER, J.), specially concurring.

1. The constitution of this State enlarges the general rule, and expressly provides for a second arraignment after the grant of a mistrial.

2. Considering the gravity of the issue, mistrials should not be lightly granted, as for errors of the court in admitting or excluding evidence.

3. But, under the exception stated in the constitution, a mistrial is not limited to cases of physical necessity, as for the sickness of a juror, but may be ordered where it is necessary to cure the effect of occurrences or misconduct tending to destroy the fairness of the trial.

Argued April 21,— Decided May 14, 1904.

Indictment for larceny after trust.   Before Judge Cann.   Chatham superior court.   January 28, 1904.

For a former report see 118 *Ga.* 776.

*Twiggs & Oliver*, for plaintiff in error.
*W. W. Osborne, solicitor-general*, contra.

SIMMONS, C. J.   The record discloses that Oliveros was put upon trial under an indictment charging him with embezzlement. He pleaded not guilty. The jury had been impaneled and sworn to try this issue between the State and the accused.   Oliveros appears to have been the cashier of a railroad company.   In order to prove that he had received the money charged to have been embezzled, a receipt signed by him was tendered in evidence.   This receipt acknowledged the reception by him of a certain package of money from an express company.   One of the objections urged by the accused to the admission of this receipt was that it was not the highest and best evidence.   The trial judge overruled the objections, and said, in announcing his opinion as to the admissibility of the evidence:   "A receipt showing the delivery of a package is about as high evidence as you can get.   It is about as high evidence as one can get that a man has received anything, when he acknowledges it in writing."   Counsel for the accused called the attention of the judge to his remarks upon the effect and weight of the receipt, and the judge then said:   "What I mean to say and what I did say is this: When a man acknowledges the receipt of money, it is about as high evidence as a man can have.   I didn't speak of the receipt at all.   The acknowledgment of the receipt of money by a party is about as high evidence as you can produce that he received it.

All receipts are open to attack. The receipt of a deed is open to attack. It is prima facie evidence of the receipt of money. It is not conclusive." The trial then proceeded for the rest of the day. At night a recess was taken. The following morning the judge, over the protest of the accused, discharged the jury and declared a mistrial because of the remarks set out above, deeming them so erroneous as to vitiate any verdict that might be found against the accused. At the following term of the court the accused was again arraigned and put upon trial before another jury upon the same indictment. He pleaded former jeopardy. The plea was overruled, and he excepted.

Was the trial judge right, under the above-stated facts, in discharging the jury and declaring a mistrial over the protest of the accused? We think not. To justify the grant of a mistrial without the consent of the accused there must be either a moral or a physical necessity. See *Nolan* v. *State*, 55 *Ga.* 521. The facts in the present case do not show either a moral or a physical necessity. This being true, the sole question then for decision is whether the trial judge may declare a mistrial for an error of law committed by him during the progress of the case in admitting or excluding evidence, or some other erroneous ruling. While many exceptions have been made by the courts to the rule that in no case could a mistrial be declared after the jury had been sworn and impaneled and put upon the prisoner, we have sought diligently to ascertain if any court has ever held, as a new exception, that a judge might declare a mistrial because of an error committed by himself, and have been unable to find such a case. The only one cited in the briefs of counsel and the only one we have been able to find which deals with such a point is Hilands *v.* Com., 111 Pa. St. 1, 56 Am. R. 235. That case holds, in substance, that the judge has no authority or power to grant a mistrial for an error committed by himelf. The constitution of this State declares that "No person shall be put in jeopardy of life, or liberty, more than once for the same offense, save on his or her own motion for a new trial after conviction, or in case of mistrial." When, therefore, a person accused of crime has been put upon his trial, and a jury, selected by him and the State, charged with the case, there must be a verdict either for him or against him, unless there is an absolute moral or physical necessity for a mis-

trial or he consents to the same. Consequently, if a judge capriciously or erroneously declares a mistrial and the accused is again put upon trial, he will be placed in jeopardy a second time for the same offense. It may be argued, however, that this same section of the constitution provides that this rule as to jeopardy shall not obtain in case of mistrial. That is doubtless true if the mistrial arises from absolute moral or physical necessity. This was the rule of a large majority of the courts before these words were put in our organic law, and of course they were placed there with knowledge on the part of the maker's of the constitution of what the courts had held to be a legal mistrial. They were also placed there, we presume, to settle what was a disputed question among some of the courts as to whether a person could again be placed upon trial for the same offense and under the same indictment after a mistrial for any cause. The constitution and laws of this State safeguard the lives and liberties of the people, and the courts have established procedure with this view and purpose. They have established, as before remarked, exceptions to the old iron-clad rule that there must be a verdict, as pointed out by the writer in *Stocks* v. *State*, 91 *Ga.* 831; but they have not made and we apprehend will never make, the exception that a mistrial may be declared in a criminal case on the judge's own motion when he thinks that he has committed error. It would not do to hold that whenever a judge comes to the conclusion that he has committed error in the trial of a criminal case he can declare a mistrial and put the accused upon trial before another jury. No one could tell where such a ruling would lead. If the judge could do this in one trial, he could do it in the second or third or even fourth. The law does not intend that one accused of crime shall be harassed in this way. But it is argued that the judge expressed an opinion in the present case in the presence of the jury, and that, under our Civil Code, § 4334, it became an imperious necessity for him to grant a mistrial. That section reads as follows : " It is error for any or either of the judges of the superior courts of this State, in any case, whether civil or criminal, or in equity, during its progress, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved, or as to the guilt of the accused ; and should any judge of said court violate the pro-

visions of this section, such violation shall be held by the Supreme Court to be error, and the decision in such case reversed, and a new trial granted in the court below, with such directions as the said Supreme Court may lawfully give." It is claimed that when the judge said in the present case, in the presence of the jury, that a receipt signed by a person acknowledging the reception of money was the highest evidence, he expressed an opinion as to what had been proved, and, as this section declares that the Supreme Court shall in every such case grant a new trial and such an error is incurable, the judge was justified in granting a mistrial. In the first place, the code does not in this section deal with mistrials. It provides that when a judge violates its provisions the Supreme Court shall grant a new trial. That is the remedy and the relief provided in this section. We apprehend that the legislature which passed this act had too much regard for the rights of accused persons to put it in the power of a trial judge on his own motion to grant a mistrial for its violation and again place the accused in jeopardy. But it is said also that it would have been a farce for the judge to have continued the trial after this expression of opinion and consumed the time of the court and country in going on with a trial when he knew that he would have to grant a new trial in case of conviction. That is a commercial argument which amounts to nothing in the administration of law, especially when the life or liberty of a citizen is in danger. A further reply is that the accused, under the law and the constitution, was entitled to a verdict at the hands of that particular jury. It was not certain, even with this expression of opinion, if it be one, that the accused would have been convicted. If convicted, his remedy was an application for a new trial, and, if his exceptions to the judge's remarks were well taken, this court under the code would have been compelled to grant the new trial.

The case has been dealt with thus far upon the assumption that the judge had really violated the provisions of the code section above cited; but comparing the remarks of the judge and the words of this section, I, speaking for myself, can not see how it was a violation of this section, especially when I consider the circumstances under which the remarks were made. A receipt signed by the accused was offered in evidence. Objection was

raised by the accused, one of the grounds being that the receipt was not the highest evidence. After counsel had stated these objections the judge, in announcing his decision as to the admissibility of the evidence, used the words set out in the first portion of this opinion. In my opinion there was not a word or a sentence used by the judge which constituted an expression or intimation to the jury as to what had been proved in the case. Technically there is a difference between evidence and proof. Evidence tends to establish or disprove an alleged matter of fact in issue. Proof is the effect of evidence, while evidence is merely the means of making proof. A fact is not proved unless it is established. The remarks of the judge did not express or intimate an opinion that any fact had or had not been proved or established. Indeed the remarks were made about an instrument which had been offered in evidence, but which had not prior to the judge's remarks been admitted. If subject to any criticism, it was that the judge expressed an opinion as to the weight of the evidence and not as to what had been proved. Expression of opinion as to the weight of evidence may or may not be error, according to the circumstances under which the opinion is expressed; but even where error, it need not be a violation of the Civil Code, § 4334. Again speaking for myself, I think this court has given this section too broad and liberal a construction. It was doubtless enacted to correct a custom of the judges which had descended to them from the common-law courts of England and this country, but which the legislature thought was a usurpation of the functions of the jury. Whether this be true or not, we all think that when an objection is made to evidence offered, the judge has a right, if he deems proper, to give the reasons for his decision on the objections; and such reasons so given, if pertinent to the objections made, do not constitute such an expression of opinion as to violate the code section above cited. This construction of the act of 1850 (now Civil Code, § 4334) was adopted soon after the passage of the act in the cases of *Wyley* v. *Stanford*, 22 *Ga.* 397, and *Reinhart* v. *Miller*, Ib. 403 (10). See also *Scarborough* v. *State*, 46 *Ga.* 33; *Claflin* v. *Continental Jersey Works*, 85 *Ga.* 28. In *Croom* v. *State*, 90 *Ga.* 430, this court held, through Bleckley, C. J., that "Generally what the court says in stating to counsel the reason for denying a motion to exclude or rule

out evidence is, if pertinent to the question raised by counsel, not error, although the reason given involve a statement as to certain testimony which is already in, or as to there being nothing in evidence showing that the circumstances are as counsel claim." In *Scarborough* v. *State*, supra, McCay, J., said: " It would be impossible to carry on a trial if this section of the code, prohibiting a judge from expressing any opinion as to what is proven, is to be construed as is contended for. A judge, in deciding as to admissibility of testimony, must always, to some extent, decide as to its weight, since often its admissibility depends on that; so he must often determine what has been proven, so as to say whether certain other things may be proven. To decide a nonsuit, he must decide if there be enough proven to justify a verdict, etc. The only practicable rule is to treat the jury as possessed of common sense and as capable of understanding what is addressed by the judge to them and what is not. He may not express to the jury any opinion; but if in the decision of any legal question, as it arises, he must pass upon facts, the statute does not apply. It must be reasonably construed. In this view of the law, we see no error in the remark of the judge. He only said to the counsel what was his view of the law, and this he had a right to do." From these authorities it would seem that the judge in the present case expressed no such opinion of what had been proved as would violate section 4334, and his remarks, therefore, could not be such misconduct on his part, as was argued by counsel for the State, as to compel him to grant a mistrial, even if misconduct on the part of the judge would authorize such a proceeding. This much has been said in reply to the argument of counsel that the judge had committed an incurable error and was therefore justified in granting a mistrial; but we put our decision upon higher ground, that is, that after one accused of crime has been put upon trial and the jury charged with his case, a mistrial can not be declared by the judge, over the protest of the accused, except for absolute moral or physical necessity, and that an error of law committed by the judge will not authorize him, without the consent of the accused, to discharge the jury and order a mistrial.

*Judgment reversed. All the Justices concur.*

LAMAR, J. I concur in the judgment. If the statement by the judge in the presence of the jury be treated as an error requir-

ing a new trial under the statutory command contained in the Civil Code, § 4334, it was a ruling of which the defendant alone had the right to complain; and as he protested against the withdrawal of the case, it should not have been ordered.    I concur also in the ruling as to "necessity," if it is intended thereby to mean that the mistrial is not the necessary result but the necessary cure, this distinction being proper in view of that provision in the bill of rights, intended to modify the former rule of construction, which was so strict that it more often defeated than served the ends of justice.    It is fundamental that "no person shall be subject for the same offense to be twice put in jeopardy of life or limb."    5th Amend. Cons. U. S.    In ancient days this was understood to mean that a trial once begun must terminate in a verdict, or else that the defendant could not be a second time arraigned for the same offense.    In the change from barbaric conditions there has been a strong tendency to get away from a construction which compelled the starving and carting of juries in order to secure a verdict.    In some jurisdictions this tendency has found expression in statutory or constitutional provisions giving to the State, in specified instances, the right to sue out a writ of error.    See State *v*. Lee, 66 Conn. 265, 48 Am. St. R. 202; Smith *v*. State, 41 N. J. L. 598; State *v*. Wyse, 33 S. C. 582.    Compare People *v*. Webb, 38 Cal. 467; Jones *v*. State, 15 Ark. 261; U. S. *v*. Sanges, 144 U. S. 310.    Compare *State* v. *Jones*, 7 *Ga.* 424, as to fraud of the accused.

Undoubtedly, however, the exemption from being twice put in jeopardy on its face is absolute; and hence, in treating a mistrial as a qualification grafted by construction upon the unqualified language of the rule, the courts felt constrained to limit such exception to those instances in which it was ordered because of some extreme, manifest, urgent, or imperious necessity.    But under the constitution of this State (Civil Code, § 5705) the right to arraign the defendant after a mistrial does not depend upon construction. The very section of the bill of rights which contains the guaranty against double jeopardy is coupled with the words, "save on his own motion for a new trial after conviction, or in case of mistrial."    The constitution does not define what sort of a mistrial, and of course can not mean one improperly granted.    According to its explicit declaration it would seem to provide for a second

arraignment where a mistrial had been ordered for any reason legally sufficient. Considering the gravity of the issue, it could never be granted capriciously, nor because of mere errors of the judge in admitting or excluding evidence, nor for erroneous rulings during the trial. For even if such errors have been adverse to the defendant, he may still have a chance of being acquitted, and is entitled to stand upon his deliverance. But in criminal, as well as civil cases, judicial investigation has for its purpose the ascertainment of truth and the administration of justice to both parties. There may be many occurrences in the presence of the jury which render this result so impossible — which so inevitably tend to vitiate the trial — that the judge in the exercise of a sound legal discretion would be authorized to take the case from the jury and declare a mistrial. When he does so, the bill of rights declares that the mistrial shall not prevent a second arraignment. No matter what may be the general rule, no matter how limited and restricted the exceptions elsewhere, they afford no standard by which to measure the meaning of a new provision incorporated in our constitution in pursuance of a policy which was intended to broaden rather than restrict the rights of the State. This view is sustained even by those cases in our reports which hold that a mistrial can only be granted because of some moral or physical necessity. For in *Nolan* v. *State*, 55 *Ga.* 524, where this language was first used in construing the new provision of the constitution, it was said that "the tendency, of late, has been to lower the standard so as to comprehend moral as well as physical necessity, and, in the region of the moral, to be content with very moderate tests." This "moderate test," if it can be called a necessity, does not consist merely in the sickness of the jurors, or other fact rendering it physically impossible to proceed with the case; but a mistrial may properly be allowed in consequence of any fact, occurrence, or misconduct calculated to vitiate the verdict. The bystanders may cry, "Hang him! Hang him!" as in *Woolfolk's* case; and on motion therefor a mistrial might properly have been granted. The result would not have been different if a mob had invaded the court-room with shouts of "Acquit him! Turn him loose!" In either case a mistrial is ordered because demanded by the ends of justice. The judge himself might feel called on to make such an order because of his own conduct,

where he had inadvertently done an act which would vitiate the verdict. So, too, the misconduct of jurors, counsel, accused, or bystander might likewise be such as to authorize a mistrial. Not that it was physically or morally impossible to proceed with the trial such as it is or would then be. It could go on as a physical fact, as it did in *Woolfolk's* case, but the verdict of acquittal or conviction would never be recognized as that calm and deliberate judgment of twelve men to which the accused was entitled, and to which, be it noted, the State was also entitled. A mistrial is not a necessary result of misconduct, but a cure made necessary by misconduct. It is not so much a necessary effect as a necessary remedy to prevent the effect.

Of course, if the occurrence is one calculated to harm the defendant alone, he may choose to waive it and to have the trial proceed, and it would therefore usually be erroneous, as here, to order a mistrial over his objection. But if the conduct was such as to prejudice the State, or to prejudice both the accused and the State, it would be for the court to determine what action he should take under the peculiar facts. It is impossible to lay down a rule. It must be left to the sound legal discretion of the trial judge acting under his oath of office, and having due regard to the rights of the accused and of the State, and subject to review as in all other cases. The principle is probably as accurately stated as it is possible to do, in Thompson's case, 155 U. S. 271, where it is said: "Courts of justice are invested with authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury; and a defendant is not thereby twice put in jeopardy, within the meaning of the fifth amendment of the constitution of the United States." If such language was not too broad under the constitution of the United States, which contains nothing about mistrials it is certainly not too broad under ours, which expressly saves the right to a second arraignment after a mistrial. Civil Code, § 5705. I am authorized to state that Justice Candler concurs in the foregoing.