STATE OF MAINE *vs.* JOHN C. SLORAH.

York.    Opinion June 5, 1919.

*Right of court to discharge jury and continue capita! case under certain conditions.*
*What constitutes being placed in jeopardy.    Rule as to what conditions may*
*operate as a bar to a plea of former jeopardy.    Right of respondent or*
*accused to be present when jury are taking a view of the premises.*
*May the right to be present be waived by accused.    Weight*
*of authority as to purpose of a view.    Right of jury*
*to receive testimony of witnesses or evidence*
*in any form during a view.*

1. Where a respondent, charged with an offense punishable by imprisonment for life, does not demand a trial at the "first term" after the finding of the indictment, Sec. 25 of Chap. 136, R. S., does not by implication preclude the continuance of the case by order of court to a later term, but leaves it subject to the common law and the discretion of the presiding Justice, as modified by the provisions of Sec. 11, Chap. 136, R. S., and Sec. 6, Article 1 of the Constitution of Maine.

2. Sec. 11, Chap. 136, R. S., was designed to carry out the provisions of Sec. 6, of Article 1 of the Constitution in guaranteeing a "speedy trial," but silence on the part of the respondent cannot be constructed as a demand for trial. Where no demand for trial at the "first term" is made by the respondent, a trial at the "second term" is a compliance with Sec. 6 of Article I of the Constitution; and where no demand for trial is made by the respondent at the "first term," an exception to the order of the court continuing the case to the "second term" cannot be sustained. The "first" and "second" terms within the meaning of Sec. 11, Chap. 136, are the first and second terms respectively after the term at which the indictment was found.

3. Where at the "second term" after the finding of the indictment, the case is not in order for trial owing to the voluntary act of the respondent in prematurely causing the case to be transferred to the Law docket, he must be held by such act to have waived his right of trial at the "second term," and a motion to quash the indictment on the sole ground that he was not placed on trial at the "second term" according to the provisions of Sec. 11, Chap. 136, was properly overruled.

4. Jeopardy in a criminal case begins when a jury has been impanelled and sworn. A respondent once in jeopardy is entitled to a verdict of guilty or acquittal, unless the case is withdrawn from the jury by the court with his consent, or by reason of some manifest, urgent necessity in order that the ends of justice may not be defeated.

5.   A manifest or urgent necessity may arise from purely moral or legal grounds as well as from physical.   The knowledge that a jury does not stand indifferent or has been subjected to influences, whether for or against the accused, that might render it impossible for them to stand indifferent between the state and the respondent, creates such an urgent, manifest necessity as to warrant the court in withdrawing the case from the jury.

6.   (1)   The consent of the accused; (2) the illness of the court, a member of the panel or of the respondent; (3) the absence of a member of the panel or the respondent; (4) the end of the term before verdict when the term is fixed in duration; (5) or where the jury cannot agree, are all recognized as constituting that "manifest necessity" warranting the court withdrawing the case from the jury.

7.   To create such a "necessity" due to outside influences upon a jury, it is not necessary for it to appear that the jury was actually prejudiced or biased thereby.   It is sufficient, if the incident or influence was of such a nature that it may have produced such a bias or prejudice that they would not stand indifferent, whether it be in favor of the state or the accused.

8.   The purpose of a view in a criminal case is not to procure evidence on which to base the verdict, but to enable the jury to better understand and appreciate the evidence produced in court.   Neither is it a part of the trial within the meaning of that word as used in Sec. 23, Chap. 136, R. S.   A respondent in a capital case has an inherent right to be present at a view, if he demands it, but he may waive it.   His right to be present, however, is not based on Sec. 6 of Article 1, of the constitution, or Sec. 23 of Chap. 136, R. S.

9.   No evidence of any kind should be permitted to be presented to a jury during a view in a criminal case, whether in the presence or absence of the accused. The jury may take into consideration only such facts as appear to the eye and only for the purpose indicated above.

10.   A respondent in a capital case may expressly waive all his rights, constitutional or otherwise, except matters involving jurisdiction or the anciently established forms of our judicial tribunals,—as the number of members of the panel.   Unless by acts or words he expressly waives them he will not be presumed to waive anything but to stand upon all his rights.   *State* v. *Oakes,* 95 Maine, 369, is not to be construed as going beyond this.

11.   The absence of a respondent by his request, or unless he demands the right to attend, while a view is being taken, violates none of his rights, constitutional or otherwise, and the respondent cannot afterward take advantage of the fact under such conditions, if the jury proceeded with the view in his absence.

12.   But acts and unsworn statements of the accused bearing on the issues raised by his pleadings, out of court, but in the presence of the jury, while the jury were taking a view of the premises where the crime was committed, which acts and unsworn statements are of such a nature that they might naturally affect the minds of the jury whether for or against the accused, are sufficient to warrant the presiding justice, after having the facts appear as a part of the record, in withdrawing the case from the jury.

13.   The right of determining when such urgent necessity exists must be left
to the legal discretion of the presiding justice, acting under his oath of office,
but subject always to review by this court.

Indictment for murder. To the different rulings of the court, respondent filed exceptions. Exceptions overruled, Judgment for State.

Case stated in opinion.

*Guy H. Sturgis,* Attorney General of the State of Maine, and *Franklin Chesley,* County Attorney for County of York, for the State.

*Emery, Waterhouse & Paquin,* for the respondent.

SITTING: SPEAR, HANSON, DUNN, MORRILL, WILSON, DEASY, JJ.

WILSON, J. John C. Slorah was indicted for murder in York County at the September term, 1917. At the January Term, 1918, being the "next term after the finding of the indictment," he was placed on trial on his plea of not guilty with a suggestion of insanity. After the impanelling of the jury, on motion of the respondent, and with the consent of the State, a view of the locus of the alleged crime was ordered by the court. Whereupon the jury in charge of an officer, accompanied by the respondent and his counsel and the attorney for the State visited the home of the respondent where the homicide was committed. Upon reaching the premises the respondent fell or threw himself down upon the piazza as the jury were about to enter the house crying out in the presence of the jury: "My God! take me away from here or I shall be insane again." He was then at the suggestion of his counsel removed by the officer in charge of him to a nearby house, while the jury in the absence of the respondent proceeded with counsel for the respondent and for the State to view the premises. On leaving the premises they were joined by the respondent and returned to court.

The court as the record shows on account of the incidents happening during the view, as set forth above, the statement of which by counsel in open court was made a part of the record, and upon the ground that they were in the judgment of the court prejudicial to an impartial trial of the respondent before that jury withdrew the case from the jury, and deeming it inexpedient to summon a new jury for another trial of the case at the January term, ordered the

case continued to the following May term, 1918, and the respondent remanded to jail. To the order of the court continuing the case the respondent excepted and filed his bill of exceptions and the case was then transferred to the Law Docket. This court dismissed the case from the Law Docket at the June term, 1918, on the ground that the exceptions were prematurely brought before the Law Court.

At the September term, 1918, the State again moved for trial, and the respondent then filled a motion to quash the indictment on the ground that under Sec. 11 of Chap. 136, R. S., he should have been tried at the second term after the finding of the indictment. His motion to quash was overruled and the respondent thereupon excepted. The respondent then filed a plea of former jeopardy, which was replied to by the State. The court overruled this plea, to which ruling exceptions were also taken by the respondent.

The case now comes before this court upon the respondent's exceptions: (1) to the order of the court at the January term, 1918, continuing the case to the May term following; (2) to the ruling of the court at the September term denying the motion to quash the indictment; (3) to the ruling of the court finding against the respondent on his plea of former jeopardy.

We will consider the exceptions in their order. We must overrule the respondent's exception to the order of the court continuing the case to the May term. The respondent relies, in support of this exception, on Sec. 6 of Art. 1 of the Constitution of our State entitling him to a speedy trial; on Sec. 11 of Chap. 136, R. S., which provides that any person in prison under indictment shall be tried or bailed at the "next term after the finding thereof, if he demands it," and on Sec. 25, Chap. 136, R. S., which provides that the trial of any criminal case, except for a crime punishable by imprisonment for life, may be postponed by the court to a future day of the same term, or the jury discharged therefrom and the case continued if justice will thereby be promoted.

The exception of capital cases from the provisions of Sec. 25, Chap. 136, simply leaves such cases, we think, subject to the common law as to continuances, and does not, as contended by respondent, preclude by implication a continuance in any event of cases, in which the offence charged is punishable by imprisonment for life. Such cases may be continued in the discretion of the court subject to

the provisions of Sec. 11 of Chap. 136, and Sec. 6 of Art. 1 of the constitution. *Com.* v. *Drake*, 124 Mass., 21; *Com.* v. *Donovan*, 99 Mass., 425; 12 Cyc., 898, and cases cited.

Section 11 of Chap. 136, R. S., was designed to carry out the general provisions of the constitution guaranteeing a "speedy trial." Since it must be inferred, we think, from the language of the statute, that a trial at the second term after the finding of the indictment complies with the constitutional provision guaranteeing a speedy trial, unless a trial is demanded by the respondent at the first term; and since we are of the opinion that the presiding Justice was warranted in withdrawing the case from the jury,—the record disclosing no demand by the respondent for further trial at the January term, nor any request that he be admitted to bail,—we think the presiding Justice did not exceed his discretionary powers in continuing the case to the May term, which we hold to be the second term after the finding of the indictment. *Stewart* v, *State*, 13 Ark., 720; *Ochs* v. *People*, 124 Ill., 399. We cannot read into the statute that silence on the part of the respondent, even in a capital case, shall constitute a demand for trial or a request for bail.

As to the exception to the ruling of the court denying the motion to quash the indictment, we must also overrule this exception. The reason assigned as the basis for the motion is that the respondent, though indicted for a felony, was not tried at the second term after the finding of the indictment, i. e., at the May term, 1918. It appears that the reason for the failure to place the respondent on trial at that term was his own act in presenting prematurely to the Law Court his exceptions to the court's order continuing the case from the January term. The right to a speedy trial and to a trial at the second term after the finding of an indictment for a felony is a personal privilege which, we think, a respondent may be held to have waived even in a capital case. We hold that the respondent in this case by his acts in having the case transferred to the Law Docket, thereby causing the delay, must be held to have waived his rights under section 11 of Chap. 136, R. S., to a trial at the May term. The question of waiver in capital cases we shall discuss later, but see *State* v. *Steen.* 115 Mo., 474; *State* v. *Marshall*, 115 Mo., 383; *Moreland* v. *Georgia*, 51 Ga., 192; *Com.* v. *Zec.* 105 At. Rep. (Penn.) 279, 281; *Bish.* New Crim. Law, Vol. 1, Sec. 951, d; 12 Cyc., 500, f;

*People* v. *Fitzgerald,* 137 Cal., 546, 550, 551; *People* v. *Hawkins,* 127 Cal., 372; *State* v. *Sasse,* 72 Wis., 4; *State* v. *Suber,* 89 S. C., 100, 103; *Shular* v. *State,* 105 Ind., 289.

We now come to the exception to the ruling of the court against the respondent's plea of former jeopardy, which is by far the most important. No questions as to procedure having been raised, we assume by consent of parties, it was submitted to the court upon the facts stated in the plea and replication, and the court in overruling the plea, held as a matter of law upon the facts stated that if jeopardy had begun at the January term, it was nullified by the subsequent proceedings. *Com.* v. *McCauley,* 105 Mass., 69.

The respondent urges in support of his exceptions as a matter of law that jeopardy began when the jury was impanelled and sworn at the January term, and that when jeopardy has once attached he was entitled to a verdict from the jury of either guilty or acquittal; that if the case was withdrawn by the court from the jury without his consent, except for what has been termed by the courts, urgent, manifest or imperious necessity, he should be discharged and may plead former jeopardy, if placed on trial again on the same indictment or for the same offence. Such we hold to be the law. 1 Bish., New Crim. Law, Sec. 1016. Cooley's Cons. Lim., page 339, (6th ed.); *State* v. *Hansford,* 76 Kan., 678, 682; *Mitchell* v. *State,* 42 Ohio St., 383, 395, 396; *State* v. *Richardson,* 47 S. C., 18; *People* v. *Warden,* 202 N. Y., 138, 151.

This leads us to inquire, first, was the respondent in jeopardy at the January term, 1918; second, if so, does any such manifest necessity appear from the record as to warrant the act of the presiding Justice in withdrawing the case from the jury and thereby nullifying the jeopardy so that it formed no bar to his trial at the September term.

Of the first, there can be no question. Practically all authorities, with but few exceptions, agree that jeopardy begins when a respondent is put upon trial before a court of competent jurisdiction, upon an indictment sufficient in form and substance to sustain a conviction, and the jury has been charged with his deliverance. The jury is said to be charged with his deliverance when they have been impanelled and sworn. Cooley's Cons. Lim. (6th ed.) page 399; Bish. New Crim. Law, Vol. 1, Secs. 1014, 1015. Does the record disclose conditions creating what has been termed by the courts a manifest,

urgent necessity, such as warranted the presiding Justice in withdrawing the case from the jury and discharging them from further consideration of it. We think it does.

Anciently it is claimed that a jury once sworn in a "case of life or member" could not be discharged by the court, but must render a verdict. Coke Litt., 277. Whether ever enforced to its full limit, which as one case puts it would require "the confinement of the jury till death, if they do not agree," *Winsor* v. *Queen,* 1 L. R., Q. B. C., 1865, page 394, is of no consequence. The rigor of and strict compliance with the technicalities of the common law in safeguarding the accused in criminal cases has ·been much relaxed since the decrease in the number of capital offenses. As early as the time of Blackstone, at least, an exception in this respect had been introduced in practice and it was recognized that juries in criminal cases might be discharged during the trial in cases of "evident necessity." Blackstone's Com., Vol. 4, page 361.

The expression "evident necessity" has been expanded and defined in practice in the course of time as occasions have arisen until under certain conditions there is no longer any question of the right of the court to stop a trial even in a capital case, and withdraw the case from the further consideration of the jury. In attempting to define those conditions, as the court puts it in the case of *Winsor* v. *Queen,* supra, "We cannot approach nearer to precision than by describing the degree (of need) as a high degree such as in the wider sense of the word might be denoted by necessity."

Certain conditions, if arising in the trial of a case, have come to be well recognized as constituting that "urgent necessity" which will warrant the discharge of a jury, and if they appear of record will bar a plea of former jeopardy: (1) the consent of the respondent, (2) illness of the court, a member of the jury, or the respondent, (3) the absenting from the trial of a member of the panel or of the respondent, (4) where the term of court is fixed in duration and ends before verdict, (5) where the jury cannot agree. Bish. New Crim. Law, Vol. 1, Secs. 1031-1033; Cooley's Cons. Lim., page 399, 400 (6th ed.); *Com.* v. *Purchase,* 2 Pick., 520; *Com* v. *Roby,* 12 Pick., 496; *Stevens* v. *Fassett,* 27 Maine, 266, 272; *State* v. *Elden,* 41 Maine, 165, 170; *State* v. *Richardson,* 47 S. C., 166, 172; 12 Cyc., 269, 270.

It is not easy to state the principle so as to cover all conditions that may arise, and the above are only examples of the instances

first gaining recognition by the courts and illustrative of the principle. It is now equally as well recognized that there are certain other conditions that create what have been termed a moral or legal necessity, as distinguished from physical necessity such as the illness of the court or jury. *Nolan* v. *State*, 55 Ga., 521; *Andrews* v. *State*, 174 Ala., 11. The administration of justice requires that verdicts, criminal as well as civil, shall be found by impartial juries, and shall be the result of honest deliberations absolutely free from prejudice or bias. The public as well as the accused have rights which must be safeguarded. If during the progress of a trial it shall become known to the court that some of the jury do not stand indifferent whether toward the State or the accused, it would be a travesty on the administration of justice if the trial must proceed, and if acquitted by such a tribunal, the constitutional safeguard may be invoked against again placing him in jeopardy before an impartial jury. Such a trial obviously should not constitute jeopardy whether the jury be prejudiced or influenced in behalf of the accused or the State. To prevent such a perversion of justice, it is now well recognized that if it comes to the knowledge of the presiding Justice that such conditions exist, it creates that imperious, manifest necessity that will warrant a discharge of the jury and such discharge will constitute no bar to another trial on the same indictment.

Of the conditions, except as found in the decided cases, more cannot be said than that in all cases, capital or otherwise, they must be left to the sound legal discretion of the presiding Justice, acting under his oath of office, having due regard to the rights of both the accused and the State, and subject to review by this court. *Oliveros* v. *State*, 120 Ga., 237; *State* v. *Wiseman*, 68 N. C., 203, 206; *Andrews* v. *State*, 174 Ala., 11; *Com.* v. *Fells*, 9 Leigh, (Va.) 613; *Thompson* v. *United States*, 155 U. S., 271. Perhaps, the most comprehensive statement of the law is found in *United States* v. *Perez*, 9 Wheat., 579, by Justice Story, and adopted in *Thompson* v. *United States*, supra:

"Courts of justice are invested with the authority to discharge a jury from giving a verdict, whenever in their opinion taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of justice would otherwise be defeated."

Some illuminating discussions of the general principles and instances of the court acting upon a moral or legal necessity, as it is termed, may be found in *State* v. *Wiseman*, 68 N. C., 203; *State*

v. *Hansford,* 76 Kans., 678; *Oliveros* v. *State,* 120 Ga., 237; *People* v. *Goodwin,* 18 Johns., 187; *Com.* v. *Fells,* 9 Leigh (Va.) 613; *Andrews* v. *State,* 174 Ala., 11; *Com.* v. *McCormick,* 130 Mass., 61; *United States* v. *Perez,* supra; *United States* v. *Morris,* 1 Curtis C. C., 23; *Thompson* v. *United States, supra; Simmons* v. *United States,* 142 U. S., 148, 154.

The last cited case, perhaps, best indicates the extent to which the courts may go in preventing a defeat of justice by withdrawing a case from a jury. A letter published by respondent's counsel and commenting on the evidence was read by some members of the panel. The court says:

"It needs no argument to prove that the Judge upon receiving such information under the peculiar circumstances attending it, was fully justified in concluding that such publication made it impossible for that jury in considering that case to act with the independence and freedom on the part of each juror requisite to a fair trial of the issue between the parties."

To render a verdict void in civil cases it need not appear that the jury was actually prejudiced, biased. or influenced by the occurrence. If it may have affected their ability to render an impartial verdict, it is sufficient. *Bradbury* v. *Cony,* 62 Maine, 223; *Cilley* v. *Bartlett,* 19 N. H., 312; *McDaniels* v. *McDaniels,* 40 Vt.; 363, 364; *Hussey* v. *Allen,* 59 Maine, 269; *Belcher* v. *Estes,* 99 Maine, 314, 315; *Heffron* v. *Gallupe,* 55 Maine, 563; *York* v. *Wyman,* 115 Maine, 353, 355. We think the same considerations should apply in criminal cases whether it might affect adversely the State or the respondent, *State* v. *Hascall,* 6 N. H., 352. Both are entitled to a fair trial.

In the case at bar it is urged on the part of the State that the court was warranted in discharging the jury from further consideration of the case, first, because the respondent was not present while the view by the jury was being taken; and, second, because statements directly bearing upon the issue raised by him in his defense were made by him in the presence of the jury while the view was being taken, and in the absence of the presiding Justice.

The question of whether the accused has a right to be present at a view of the locus of the alleged crime in a criminal case is one upon which the decided cases are not in accord. The conflicting opinions seem to arise, in part, at least, from different conceptions as to the nature and purpose of a view:—Whether for the purpose of obtain-

ing information which may be regarded as evidence, or simply to enable a jury to apply and understand the evidence submitted in court. The cases holding the right of the accused to be present do so chiefly on the ground that either it is a part of the trial, or that since the jury has a right to treat the information received during the view as evidence, and under the constitution the accused has a right to be confronted by the witnsesses, he must, therfore, be present. In some states his power to waive that right is doubted. An examination of the numerous cases upon this question discloses that the right of the accused to be present at a view, if he demands it, is very generally recognized as inherent under a proper considera- tion of the rights of the respondent in a criminal case, but in a very large majority of the cases it is held that he may waive that right, even in capital cases. Eminent authorities and well considered cases, however, hold that no rights of the accused are violated in taking a view of the locus of the crime in the absence of the respon- dent, even in capital cases, though no waiver of his rights in this respect appears from the records, on the grounds that it is not the taking of evidence and is no part of the trial.

In *Shular* v. *State*, 105 Ind., 289, 299, a leading case on this ques- tion, the court says:

"It is the duty of the jurors to view the premises, not to receive evidence, and nothing could be done by the defendant or his counsel if they were present, so that their presence could not benefit him in any way, nor their absence prejudice him." And again: "It is equally clear that the view obtained by the jury is not deemed to be evidence. . . . . In contemplation of law the place of trial is not changed."

In *People* v. *Thorn*, 156 N. Y., 286, 298:

"It appears to us that the more natural construction . . . . is that the view is not the taking of testimony within the meaning of the Bill of Rights, but that the sole purpose and object of the view is to enable the jurors to more accurately understand and more fully appreciate the testimony of the witnesses given before them. . . . . The prisoner's counsel asked that the jurors be permitted to view the premises and waived the right of himself or the defend- ant to be present. If the view was not a part of the trial of the taking of evidence within the constitution and the statutes, there can be no doubt of the power of the defendants to waive his presence."

In *Chute* v. *State*, 19 Minn., 230;

"The view is not allowed for the purpose of furnishing evidence upon which a verdict is to be founded, but for the purpose of enabling the jury to understand and apply the evidence which is given in court."

In *Com.* v. *Van Horn*, 188 Pa. St., 143, citing *Schuler* v. *State*, supra, and *State* v. *Adams*, 20 Kan., 311;

"We are unable to see in what manner the mere absence of the defendant at the view worked a deprivation of any constitutional right, considering that no testimony was or could be taken during the view."

It may also be noted in passing that notwithstanding the theory of the nature of a view in civil cases held by the Massachusetts Court, in two of the most famous homicide cases ever tried in New England, *Com.* v. *Knapp*, 9 Pick., 496, 515; *Com.* v. *Webster*, 5 Cush., 295, 298, a view was had without the presence of the accused. Authorities of the same tenor may be found in Greenleaf on Evidence, Vol. 1, Sec. 162, o, 4, (6th ed.); *State* v. *Adams*, 20 Kan., 311; *State* v. *Mortensen*, 26 Utah, 312; *Blythe* v. *State*, 47 Ohio St., 234; *State* v. *Ah Lee*, 8 Or., 214, 217; *Elias* v. *Territory*, 9 Ariz., 1; *People* v. *Auerbach*, 176 Mich., 23, 46; *State* v. *Hartley*, 22 Nev., 342; *State* v. *Sasse*, 72 Wis., 4.

The cases usually cited as sustaining the contrary view are *People* v. *Burch*, 68 Cal., 619, 623; *Benton* v. *State*, 30 Ark., 328; *State* v. *Sasse*, 68 Wis., 530; *State* v. *Bertin*, 24 La. Ann., 46; *Foster* v. *State*, 70 Miss., 755; *Carroll* v. *State*, 5 Neb., 31; but even in California, Arkansas, Nebraska and Wisconsin later cases hold that the right may be waived. *People* v. *Fitzgerald*, 137 Cal., 546, 549; *People* v. *Mathews*, 139 Cal., 527; *Whitley* v. *State*, 114 Ark., 243; *Neal* v. *State*, 32 Neb., 120, 131; *State* v. *Sasse*, 72 Wis., 4. Also see *State* v. *Suber*, 89 S. C., 100, 102; *State* v. *Congdon*, 14 R. I., 458, 463; *State* v. *Buzzell*, 59 N. H., 65, 70; *Com.* v. *McCarthy*, 163 Mass., 458.

The conflicting authorities upon the nature of the view and the importance of determining for the future the rights of respondents in criminal cases in respect to their presence thereat, leads us to examine this question farther for the purpose of determining the law in our own State. Our examination of the authorities discloses, we think, that the greater number hold the purpose of a view, except possibly under Statutes in real actions and land damage cases,

*Chute* v. *State*, 19 Minn., 230, or in cases where it becomes necessary to examine personal property that cannot be conveniently presented in court as exhibits, that the purpose of a view is to enable the jury to more intelligently apply and understand the testimony as presented in court; and in criminal cases, at least, to receive testimony of witnesses or evidence in any form during the view is reversible error. *People* v. *Gallo*, 149 N. Y., 106, and cases cited above. The Massachusetts Court seems to have gone further than any other in holding the information received while taking the view to be evidence, at least in civil cases. *Tully* v. *Fitchburg*, 134 Mass., 499; *Hank* v. *Boston & Albany R. R.*, 147 Mass., 495; *McMahon* v. *Lynn & Boston R. R.*, 191 Mass., 295; *Com.* v. *Chance*, 174 Mass., 245; *Norcross Bros.* v. *Vose*, 199 Mass., 81.

. This court in an action for damages for changing the grade of streets has held that upon a view under the Statute the jury had the right to take into consideration what they saw of the situation. *Shepherd* v. *Camden*, 82 Maine, 535, and in *Wakefield* v. *Boston & Maine R. R.*, 63 Maine, 385, also a land damage case: "In contemplation of the statute, the view is a portion of the evidence to be submitted to and considered by the jury in determining their verdict."

In *Cunningham* v. *Frankfort*, 104 Maine, 208, however, this court said:

"A view may render the testimony more intelligible and otherwise afford more valuable assistance, but it does not authorize the jury to ignore physical facts or disregard settled rules of law."

The Massachusetts Court, though it extends it farther, uses this language, in *Tully* v. *Fitchburg*, supra.

"In many cases, and perhaps, in most, except those for the assessment of damages, a view is for the purpose of enabling the jury better to understand and apply the evidence which is given in court."

We are, therefore, of the opinion, without modifying the prior views of this court in land damage cases, as laid down in *Shepherd* v. *Camden* and *Wakefield* v. *Boston & Maine R. R.*, supra, or in the case of the examination of exhibits that cannot be conveniently produced in Court, *Trafton* v. *Pitts*, 73 Maine, 408, that the theory most consonant with reason is to hold that the purpose of a view is not to receive evidence, but as the court has so frequently phrased it, to enable the jury to more intelligently apply and comprehend

the testimony presented in court; and that so far as the information received on the view can in any way be considered by the jury it must be limited to such as is obtained from an ocular examination of the premises. No testimony of any kind should be permitted to be presented to a jury while away from the presence of the court taking a view. *People* v. *Gallo*, supra. *People* v. *Fishman*, 119 N. Y. S., 89. We further hold that at a view there is no such confrontation of witnesses as requires the presence of the accused in a criminal case. Greenleaf on Ev., Sec. 162, o, 4, (6th ed.) Nor do we think it is a part of the trial in the sense in which the word is used in Sec. 23, Chap. 136, R. S.; but that the place of trial is at the court-house. The respondent does not follow the jury into the jury room at its deliberations. If he is present in court when they return, the statute is complied with. Whatever his rights are to attend, if he demands it, and we think it should not be denied him in capital cases, he may in all cases waive them, and the view properly proceed in his absence.

One other question requires consideration before disposing of the exceptions now under consideration, and that is the power of a respondent to waive any rights in a capital case. In *State* v. *Oakes*, 95 Maine, 369, this court said: "A person on trial for murder must be considered as standing upon all his legal rights and waiving nothing," adopting the language of some of the earlier Illinois cases and citing as authority *Hopt.* v. *Utah*, 110 U. S., 574; *Cancemi* v. *People*, 18 N. Y., 128; *Dempsey* v. *People*, 47 Ill., 323; *Perteet* v. *People*, 70 Ill., 171.

In the case of *Hopt* v. *Utah* the right to be present at a hearing before triers of the qualifications of jurors in a capital case under the Utah statutes held to be a jurisdictional question which the respondent could not waive. In the case of *Cancemi* v. *People* the respondent undertook to waive the right of trial by a jury of twelve members, and the court held this to be a dangerous innovation in a criminal case and could not be tolerated. In *Dempsey* v. *People* it was held to be error to allow a juror to talk to a bystander inquiring as to the truth of a statement made by a witness, and that the accused did not waive any rights by not objecting to it. In *Perteet* v. *People*, however, the last case cited, the court says, and we think that *State* v. *Oakes* cannot be construed as going any farther:

"A prisoner in a capital case is not to be presumed to waive any of his rights, but that he may by express consent admit them all away can neither be doubted nor denied."

The court in *Perteet* v. *People*, commenting further on an earlier Illinois case, *People* v. *Scates*, 3 Scam., 351, where the same language was used as in *State* v. *Oakes*, says:

"He may plead guilty and thus deprive himself of one of the most valuable rights secured to the citizen, that of trial by jury. If he can expressly admit away the whole case then it follows he may admit away any part of it, but he will not be presumed to have done so. His consent must be expressly shown, and this is the whole scope of the doctrine in the case referred to."

The above does not, of course, apply to jurisdictional questions which cannot be waived.

Applying these principles to the facts shown of record in the case. Clearly, we think, if the respondent had the right to be present at the view, he expressly waived it, and it was not a sufficient ground for withdrawing the case from the jury because it proceeded in his absence. He requested it, and his counsel without objection on his part directed that he be removed. We can conceive of situations where it might be almost inhuman to compel a respondent against his will to visit the scene of the crime in the presence of the twelve men in whose hands his life rested. We could not have allowed him to take advantage of his absence caused at his own request, if the trial had continued and a verdict of guilty had been rendered.

The exclamation by him in the presence of the jury, however, that if he was not removed he would go insane again, was in the nature of evidence improperly presented to the jury out of court,—an unsworn statement of the accused. We cannot say that it influenced the minds of the jury, but it may have. *State* v. *Hascall*, 6 N. H., 352; *Driscoll* v. *Gatcomb*, 112 Maine, 289, 290. The Court is not compelled to find as a fact that the improper proceedings actually influenced the minds of the jury. It is sufficient if it may have prejudiced them either for or against the accused. The State as well as the respondent is entitled to a trial by a jury free from all bias, or prejudice or improper influence, and to a verdict based on the sworn statements of witnesses presented in court where they may be tested by cross examination. *People* v. *Gallo*, supra, *People* v.

*Fishman,* supra. To permit the jury to receive statements of the accused or any witness out of court would be a most dangerous practice. We are of the opinion that the acts and statements of the accused in the presence of the jury, away from the presence of the court, under the circumstances of this case, created a manifest, urgent necessity that in order to prevent the defeat of justice warranted the court in withdrawing the case from the jury. The respondent wilfully created these conditions. We do not think he can now complain. We therefore overrule the exceptions to the ruling of the court that these facts constituted no bar under his plea of former jeopardy to his trial at the September term, 1918.

Entry must be,

*Exceptions overruled.*
*Judgment for the State.*