# Andrews *v.* The State.

## *Murder.*

Decided Jan. 11, 1911.　Rehearing denied Dec. 21, 1911.
56 South. 998.)

1. *Criminal Law; Former Jeopardy; Statutes.*—Section 9, Constitution 1901, authorizes the legislature to provide additional causes for the discharge of juries without the consent of the parties, and without putting accused in jeopardy, and authorized the enactment of section 7314, Code 1907.

2. *Same; Discharge of Jury.*—Section 7314, Code 1907, does not empower the court to fix the reasons for the discharge of the jury, but merely authorizes the court to determine whether the reasons fixed by the statute exists; hence, if the reasons found and entered by the court are sufficient under the statute, its action therein is conclusive, with the possible exception of fraud or gross abuse of discretion.

3. *Same; Plea; Unauthorized Discharge.*—A plea of former jeopardy for the unauthorized discharge of a jury, under 7314, Code 1907, should either set out the alleged unauthorized order of discharge or aver that no order was entered upon the minutes discharging the jury, and if it fails to make one or the other of these allegations it is demurrable.

4. *Jury; Venire; Capital Case; Number.*—Where the order for the venire in a capital case fixed the number of persons at eighty, to be composed of the jurors drawn and summoned for that week of the court, and thirty names to be specially drawn, and only forty

seven of the regular jurors had been summoned, the venire of seventy-seven thus constituted was illegal, and the trial by such venire was not giving to the defendant his rights under the order, and hence, must result in a reversal.

APPEAL from Jefferson Criminal Court.

Heard before Hon. S. L. WEAVER.

John Andrews was convicted of murder, and he appeals. Reversed and remanded.

The facts as to the venire sufficiently appear in the opinion. There were seven pleas in abatement, but the following will serve to illustrate the matters set up in said pleas: "And now comes the defendant in the above-entitled cause, by attorney, and pleads and says that the State of Alabama ought not to further prosecute the said indictment against him, because heretofore, to wit, at the April term of said court, the grand jury of said county, upon their oaths, in an indictment found by them, present that John Andrews unlawfully and with malice aforethought killed Taylor Johnson by shooting him with a pistol, which said indictment is in words and figures as follows, to wit: (Here follows the indictment in Code form for murder in the first degree.) And that heretofore, to wit, at the September term, 1909, of said court, which court had jurisdiction to hear and try said cause, before the Honorable Samuel L. Weaver, associate judge of said court, the defendant was duly arraigned and placed upon trial before a jury of 12 men, duly sworn and impaneled in said cause, upon a plea of not guilty; that said jury, after hearing the evidence and the charge of the court, on, to wit, the 18th day of September, 1909, in the afternoon of said day, retired to consider of their verdict; that hereafter on, to wit, the 20th day of September, 1909, and before the adjournment of said court, and without the consent of the defendant, and against his objection, the said jury and jurors were discharged by the court without any

legal necessity therefor, and without rendering a verdict. And defendant says that he is the same identical person charged in said indictment, and that he is now charged in this present indictment as having unlawfully and with malice aforethought killed Taylor Johnson by shooting him with a pistol, which offense the defendant alleges is based upon and is of the same transaction and act as alleged in the indictment aforesaid, and which said indictment aforesaid, and the indictment upon which the defendant is now arraigned is one and the same indictment. And the defendant alleges that said jury was discharged without the consent of the defendant, and before the said jury had ample and sufficient time to consider of their verdict, and before the discharge of said jury was authorized by law; that said jury was discharged aforesaid before they had had a reasonable time given them to consider of their verdict; that there was no manifest necessity for the discharge of said jury or jurors; that the ends of justice would not have otherwise been defeated, had said jury not been discharged as aforesaid. All of which the defendant is ready to verify," etc.

ALLEN & BELL and T. T. HUEY, for appellant. The court erred in sustaining the demurrers to the plea of former jeopardy.—Section 10, Constitution 1901; Section 7314, Code 1907; *Nedd v. The State,* 7 Port. 187; *Cobia v. The State,* 16 Ala. 781; *McAuley v. The State,* 26 Ala. 135; *Vincent v. The State,* 43 Ala. 402; *Bell v. The State,* 44 Ala. 393; *Grogan v. The State,* 44 Ala. 1; *Ex parte Clements,* 50 Ala. 459; *Foster v. The State,* 88 Ala. 182; *Johns v. The State,* 97 Ala. 77. The court's attention is called to the following cases from other jurisdictions bearing upon this question.—*People v. Johns,* 48 Mich. 554; *Ex parte Ulrich,* 42 Fed. 587;

*State v. Robinson,* 15 South. 146; *Teat v. State* (Miss.) 24 Am. Rep. 146; *Helm v. State* (Miss.) 6 South. Rep. 322; *Grant v. People* (N. Y.) 4 Parker Cr. Rep. 527; *King v. People* (N. Y.) 5 Hun. 297; *State v. Garregues,* 2 N. C. 241; *State v. Prince,* 63 N. C. 529; *State v. Sommers* (Miss.) 61 N. W. 907; *Com. v. Hetrich,* 1 Woodward, Dec. 288; *Miller v. State,* 8 Ind. 325; *McCorkle v. State,* 14 Ind. 39; *Reese v. State,* 8 Ind. 416; *Conklin v. State* (Neb.) 41 N. W. 788; *State v. Waterhouse,* 8 Tenn. 278; *Powell v. State,* 17 Tex. App. 345; *People v. Wood,* 1 Wheeler, Cr. Cas. 469; *Mahola v. State,* 31 Amer. Dec. 591; *Gruber v, State,* 3 W. Va. 699; *Wright v. State,* 32 S. W. 701; *Almon v. State,* 64 N. C. 364; *Williams v. Com.* (Va.) 44 Am. Dec. 403; *State v. Pool,* 72 Tenn. 363; *Com. v. Fitzpatrick,* 1 L. R. A. 451; *Com. v. Cook,* 6 Serg. R. 577; *Com. v. Clue,* 3 Rawell 498; *Ex parte Glenn,* 111 Fed. 257; *Dobbins v. State,* 14 Ohio St. 493; *Rudder v. State,* 29 Fed. App. 262, 15 S. W. 717. Where pleas in bar are filed and undisposed of, it is error to submit these pleas along with the plea of not guilty.— *Parker v. State,* 151 Ala. 641; *Faulk v. State,* 52 Ala. 416. No matter how a plea of former jeopardly is disposed of, there should have been a judgment on the plea and a disposition of it before a judgment of guilty can be entered.—*Faulk v. State,* 52 Ala. 416; *Donnelly v. State,* 130 Ala. 132; *Thyer v. State,* 138 Ala. 39; *Spraggins v. State,* 139 Ala. 93.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The pleas were defective for want of proper averment.— *Cross v. The State,* 117 Ala. 73; *Black v. The State,* 123 Ala. 78; *Storrs v. The State,* 129 Ala. 101. The court had a right to find that the conditions prescribed by the statute existed and to discharge the jury without

having put the defendant in jeopardy.—*Ned v. The State,* 7 Port. 187; *Hawes v. The State,* 88 Ala. 37; Sec. 9, Const. 1901; Sec. 7314, Code 1907.

ANDERSON, J.—Section 9 of the Constitution of 1901 embraced all of section 10, art. 1, of the Constitution of 1875 against twice in jeopardy, but in addition thereto provides: "But courts may, for reasons fixed by law, discharge juries from the consideration of the case, and no person shall gain an advantage by reason of such discharge of the jury." We cannot agree that this change in the organic law was made only to authorize the Legislature to provide by statute for the discharge of juries for the same and only reasons authorizing a discharge under the decisions of this court prior to the last constitutional enactment. To so hold would render the addition to section 9 of the Constitution nugatory, and section 7314 would be a useless enactment. We think that the constitutional change was made to extend the right to discharge juries for causes not then existing and to delegate to the Legislature authority to provide for a mistrial for any reason to be fixed by law. The Legislature did by section 7314, Code 1907, provide for the discharge of juries without the consent of the parties, when in the opinion of the court or judge there is a manifest necessity for the discharge, or when the ends of justice would otherwise be defeated, requiring that the reason or cause of discharge shall be entered upon the minutes of the court. The statute conforms to the Constitution and fixes the reasons for a discharge, to wit, when there is a manifest necessity for same, or when the ends of justice would otherwise be defeated.

The statute does not authorize the trial court to fix the reason for the discharge, but merely authorizes him

to determine whether or not the reason fixed by law exists. It was evidently not intended that the Legislature should undertake to define and write into the face of the statute what would and must constitute a necessity in every case or particularize the instances wherein the ends of justice would be defeated. The statute fixes the reasons for a discharge, and wisely leaves it to the opinion or discretion of the judge or court to determine whether or not the reason, as fixed by law for the discharge, really exists. If, therefore, a jury is discharged, and the reason for doing so, as found and entered by the judge, are sufficient under the statute, this court will treat the same as conclusive, except, perhaps, in a case of fraud or a gross abuse of discretion.

The jeopardy relied upon was the unauthorized discharge of the jury. Therefore the plea should have set up the order of discharge or else averred that no order was entered upon the minutes, and, failing to contain this material and important averment, they were subject to the State's demurrer. While form 7, p. 843, 3 Code 1907, is made sufficient, an examination of same will disclose that the last blank contemplated that it be filled with the matters and facts constituting a bar to a subsequent prosecution, and the defendant should, therefore, set out an order improperly made or aver that no legal or valid order was made.

This case, however, must be reversed, owing to error in fixing the venire to try the defendant. The order fixed 80 persons to try the case which should have been composed of the regular jurors summoned and a sufficient number to be specially drawn to equal the number fixed. There were over 47 regular jurors summoned, which, with the special number drawn, made only 77, not 80, as required by the order.—*Jackson v. State*, 171

[Andrews v. The State.]

Ala. 38, 55 South. 118; *Bailey v. State,* 172 Ala. 418, 55 South. 601.

DOWDELL, C. J., and SIMPSON and SOMERVILLE, JJ., concur.

McCLELLAN, J.—Two matters are determined on this appeal, viz.: (a) The insufficiency of the pleas of former jeopardy; and (b) that reversible error inhered, as will be stated, in the constitution of the venire to try appellant.

In the conclusion (only) upon the first matter (a) I concur. From the prevailing view in the latter matter I dissent. My opinion, and the reason supporting it, with respect to the pertinent construction of section 9 of the Constitution of 1901, along with Code 1907, § 7314, will be stated after the venire matter has been briefly considered. The prevailing opinion thus points out the error upon which the reversal is rested: "The order fixed 80 persons to try the case, which should have been composed of the regular jurors summoned and a sufficient number to be specially drawn to equal the number fixed. There were only 47 regular jurors summoned, which, with the special number drawn, made only 77 and not 80, as required by the order.—*Jackson v. State,* 171 Ala. 38, 55 South. 118; *Bailey v. State,* 122 Ala. 4181 55 South. 601." Two distinct reasons impel me to the conclusion that no reversal on this point should enter. The first is that by express provision in section 29 of the act approved August 31, 1909 (Acts [Sp. Sess.] 1909, pp. 305-320), the only objection that can be taken to a venire is "fraud in drawing or summoning the jurors," thereby expressly excluding the objection upon which the reversal is rested. Section 29 reads: "It is hereby expressly declared to be the intent

2—174

of the Legislature in the enactment of this law to make the provisions hereof in the relation to the selection, drawing, summoning, or impaneling of jurors directory merely, and not mandatory. The jurors selected, drawn, summoned, and impaneled under the provisions of this act, whether at or earlier or later day than required by this act, must and shall in all respects be deemed legal, and to possess in full in every respect power to perform all of the duties belonging to grand and petit jurors. And no objection can be taken to any venire of jurors except for fraud in drawing or summoning the jurors." It is said in *Jackson's Appeal*, 171 Ala. 38, 55 South. 120, that the quoted section "has no application as to what constitutes a legal venire, but relates to the manner of selecting, drawing, and impaneling jurors," and upon this interpretation a ruling was made in *Bailey's Appeal*, 172 Ala. 418, 55 South. 601, 603.

Apart from any other factor, it is too evident for doubt that all of section 29 was not considered, or given effect, when the matter was decided upon the reasons given in *Jackson's Appeal*. Obviously no due account was taken of the last provision in that section (29), which reads, "And no objection can be taken to any venire of jurors, except for fraud in drawing or summoning the jurors," because the reason given by the court in *Jackson's Appeal* points unerringly and alone to the provisions of the section just preceding that above quoted. Not content with those (preceding) curative provisions, the lawmakers employed the broadest terms to avoid the availability or effect of any other possible objection to the venire except fraud in drawing or summoning the jurors. If section 29 in its entirety only had the effect attributed to it in *Jackson's Appeal*, the Legislature must be held to have needlessly, causelessly, merely reiterated, and

that alone, in its last provision therein, what had been immediately preceding specially provided for. That the lawmakers entertained no intent in the last sentence of section 29 to merely set down again what they had already particularly expressed is perfectly apparent from the clear terms of the section. So, to interpret that section as *Jackson's Appeal* does, effects to strike therefrom its concluding provision. That cannot in my opinion be justified. The plain language of the section forbids it. When we read *Jackson's Appeal* in connection with *Bailey's Appeal* on this point, it appears that the error adjudged was in the order and not in the venire, which was the product necessarily, of the order.

In view of the long recognized, previous practice and heretofore general understanding in this State that a venire following from an erroneous order was subject to quashal on the theory that an erroneous order for a venire could not constitute a valid venire, the distinction taken in the *Jackson and Bailey Appeals* in this particular is not clear, much less tenable. A necessary consequence is that an aptly grounded motion to quash such a venire would merit denial (see *Bailey's Appeal*), because not directed to the error, viz., that intervening in the order and not in the product thereof, the venire. So, in order to reach the new status, a new system or means must be invented or evolved, whereby a defendant so desiring may test the sufficiency of the order in this particular, what form that means should have or will take is not indicated, and the writer is inclined to think it will be difficult to be logically supplied. But, in any event, it is hard to conceive of an erroneous legal status that produces immediately an unassailable (except for fraud) result, viz., a venire, though such seems to be the certain effect of the rulings in the *Jackson*

*and Bailey Appeals.* As well say, it seems to me, that wrong may be the parent of right. Natural conceptions abhor that idea, and reason affords no basis or support for it. It is patent, as I view it, that the conclusion of these decisions discover no sound ground upon which to avoid the express effect of the last provision of section 29. The distinction of error in the order and at the same time the exemption of the venire from assailment cannot be supported or justified. But, even if it be assumed that there was prejudicial error in the order, the defendant waived it, and a reversal should not enter therefor. In this case no objection to the order or to the venire was made on this point in the court below. From the judgment of conviction the defendant appealed, pressing in brief and in argument as the bar only the ruling of the court in sustaining demurrers to his pleas of former jeopardy. The judgment appealed from was affirmed. Appellant applied for rehearing, which, after several months, was denied. Thereupon, for the first time, it was suggested that the error found in the *Jackson and Bailey Appeals* in respect of the special venire was present in this cause.

In *Thomas' Case,* 94 Ala. 7b, 75, 10 South. 432, treating a question (aside from the provisions of section 29 of the Act before quoted) identical in principle, if not in fact, with that here involved, this court held, Stone, C. J., writing, that a motion *in the trial court* to arrest the judgment for the error committed came *too late.* It was said: "Such motion, *not raising the question of the guilt of the accused,* should always be made before the trial on the merits is entered upon. Parties must not be permitted to speculate on the chances of a favorable verdict, and, failing, then fall back on some *preliminary ministerial error* not previously called to the attention of the court." (Italics supplied.) The sound-

[Andrews v. The State.]

ness of this doctrine of *Thomas' Case* has never been doubted by this court. It was clearly recognized in *Ryan's Case,* 100 Ala. 105, 108, 14 South. 766; *Dunn's Case,* 143 Ala. 67, 71, 30 South. 147; *Longmire's Case,* 130 Ala. 66, 67, 30 South. 942. It is denied its wholesome and rational effect in this class of cases (*Bailey's Case, supra*) in consequence of the asserted difference between the jury law of 1887 (Crim. Code 1886, p. 134) and that now in force. I am unable to see in this any sound ground upon which to predicate a conclusion that the pertinent doctrine of *Thomas' Case* is inapt. A reading of the jury law of 1887 in respect of special venires will, in my opinion, emphasize the error of the presently prevailing conclusion. What Chief Justice Stone expressed in *Thomas' Case* for the court was not rested upon the provisions of the jury law of 1887, but took account of a broad principle, vital to the rational administration of the criminal law. He held that such matters did not go to the guilt or innocence of the prisoner; that they were 'preliminary ministerial errors;" and that they were waived by a failure to present them "before the trial was entered upon," for the reason, among others, that to hold otherwise would arm the prisoner with a right to speculate upon the result. If the prevailing opinion on this appeal is finally accepted, the prisoner need make no objection in the trial court and need make none on appeal until all else fails, thereby assuring him of the right to two speculations upon two results in two courts; the last in a court that has, in such cases, appellate jurisdiction only.

In construction of section 9 of the Constitution and of Code, § 7314:

Section 9 of the Constitution of 1911 is as follows: "That no person shall, for the same offense, be twice put in jeopardy of life or limb; *but courts may, for rea-*

*sons fixed by law, discharge juries from the considera-*
*tion of any case, and no person shall gain an advantage*
*by reason of such discharge of the jury."* (Italics sup-
plied.) The italicized words were added by the makers
of the last Constitution (of 1901) to the preceding pro-
hibition against second jeopardy which had appeared in
the previous organic laws of this State. The general
prohibition against the subjection of persons to second
jeopardy was but the restatement of the doctrine to that
effect of the common law.—*Ned v. State,* 7 Port. 187,
214. Following the ample historical observations, in-
cluding authoritative judicial expressions, made and re-
ferred to in *Ned v. State, supra,* and other of the deci-
sions of this court, subsequently delivered, touching the
matter of jeopardy as viewed at common law, I will pro-
ceed, without needless repetition, to state my construc-
tion of the constitutional provision before quoted and
of the statute (Code, § 7314) enacted upon its sugges-
tion.

While the common-law doctrine in respect of jeopardy
was as declared in our previous Constitutions yet the
inquiry of jeopardy vel non was affected in conclusion
in concrete cases where juries were discharged by the
court before verdict, and without the consent of the ac-
cused, by considerations comprehended in the general
terms, "pressing necessity." Where the necessity for a
discharge under such circumstances was manifestly
pressing, it was ruled that the prisoner had not been
subjected to jeopardy in that instance; and hence no ad-
vantage inured to him because of the proceedings so
thwarted in orderly progress to finality by the action of
the court in discharging the jury. So in *Ned's Case* the
common-law doctrine was taken to negative the posses-
sion by the courts of any discretionary power in the
premises—that the power of the courts found its limit

in the determination of the facts, and that thereupon the law determined the presence, the imperiousness, of the necessity to discharge the jury, and in consequence averted jeopardy of the prisoner.  What state of facts measured up to the pressing necessity prerequisite to a discharge of a jury by the court and without the consent of the prisoner without operating an acquittal of him has been variantly dealt with and decided in numerous cases.  Some of them may be found considered, noted, or decided in the following decisions delivered here.— *Hawes v. State,* 88 Ala. 37, 62, 7 South. 302; *Powell v. State,* 19 Ala. 577; *McCauley v. State,* 26 Ala. 135; *Ned* in *Ned's Cases:*

Assuming to lay down serviceable general rules in respect of the matter in hand, where the prisoner does not consent that the jury may be discharged, it was said in *Ned's Cases:*

"(1) That courts have not in capital cases a discretionary authority to discharge a jury after evidence given.

"(2) That a jury is ipso facto discharged by the termination of the authority of the court to which it is attached.

"(3) That a court does possess the power to discharge a jury in any case of pressing necessity, and should exercise it whenever such a case is made to appear.

"(4) That sudden illness of a juror or of the prisoner, so that the trial cannot proceed, are ascertained cases of necessity, and that many others exist, which can only be defined when particular cases arise.

"(5) *That a court does not possess the power in a capital case to discharge a jury because it cannot or will not agree.*"

It was in the light of this view of the common law prevailing with this court that section 9 of the Constitu-

tion of 1901 was ordained. Therein it was clearly provided that the reason for the discharge of juries from the consideration of cases should be fixed by law. The phrase, "for reasons fixed by law," obviously remits the determination of what reasons should warrant the courts in discharging juries to the source of the statute law, viz., the Legislature. The words, "fixed by law," as here employed, cannot have reference other than to the result of legislative enactment. Such was the express purpose of the makers of the Constitution as read from the debates therein on the thirty-ninth day of the sessions of that body. If it be interpreted as comprehending pertinent rules of the common law, then it would become a grave, doubtful question whether the Legislature could, under such an effect of the constitutional phrase, enact statutes opposed to the common-law rules, qualifying, expanding, or rendering them nugatory; for, if the phrase recognized common-law rules as affording reasons fixed by law, the Legislature would doubtless be powerless to substitute in whole or in part therefor reasons of purely legislative creation for the discharge of juries from the consideration of any case. Taking the common-law rules as *Ned's Case* and *Hawes' Case* state or illustrate them, a status of legal conclusion approved by this court when the Constitution of 1901 was written, and giving due influence to the indicated result of a contrary interpretation, the Constitution's phrase, "for reasons fixed by law," must be construed as leaving to legislative enactment the establishment of the reasons whereon the courts may discharge juries without advantage to the accused.

The Legislature entered upon the task remitted to it by the Constitution (section 9), and in Code 1907, § 7314, provided: "Sec. 7314. Discharge of Jury: Mistrial Entered.—The courts or presiding judges in all

cases of jury trial may discharge the jury without giving a verdict, with the consent of all parties to the trial, or without the consent of the parties, when in the opinion of the court or judge there is a manifest necessity for the discharge, or when the ends of justice would otherwise be defeated. In all cases in which the jury is discharged without a verdict, a mistrial shall be entered upon the minutes of the court, assigning the reason or cause for the mistrial; and no person shall gain any advantage by reason of such discharge of the jury." If I am correct in interpreting the phrase, "reasons fixed by law," as remitting to the Legislature the establishment, by enactment, of the reasons for the discharge of juries from consideration of cases, the statute (section 7314) is susceptible of two constructions—one rendering it constitutional and the other unconstitutional. The construction leading to the latter result (unconstitutionality) is that the Legislature undertook to delegate to the courts or judges the determination of the existence of the two reasons therein provided for the discharge of juries avoiding jeopardy, whereas the Constitution committed the establishment of such reasons to the lawmaking branch of the government. There would seem to be no doubt that such a delegation of the power to fix the reasons for the discharge of juries could not be validly effected—a delegation that would vest the courts and judges with a power committed alone to the Legislature. The other construction leading to constitutional validity of the statute (section 7314) would read it as remitting to the "courts or judges" the ascertainment of this inquiry of fact: Whether the facts shown or appearing make a case of "manifest necessity" for the discharge of the jury, the law affording the standard therefor. This view consists with the conclusion thus expressed in *Ned's Case*, 7 Port. 210, following

the refusal of this court to accept the notion that discharge vel non by the court was a matter of discretion: "The judge mus' determine the existence of the facts, but, when they are ascertained, the law determines whether they constitute a case of necessity." Driving to the same result it was declared in *Hawes' Case, supra*: "The courts of last resort of other states, and among them Alabama, hold that the exercise o. the power to discharge a jury is not a matter of unbridled discretion in the primary court, but that its action in that behalf is always open to review on appeal or writ of error." Heeding and applying the familiar canon of construction that avoids unconstitutionality of enactments where that may be done without violating a contrary intent the statute must be interpreted as providing for the discharge of juries as prescribed, when there is "manifest necessity" therefor, or "when the ends of justice would otherwise be defeated."

So interpreting the statute (section 7314), it is seen that the Legislature has established two reasons for the discharge of juries, working a mistrial and avoiding jeopardy in that proceeding. These reasons are: First, manifest necessity; second, when such a state of facts intervenes as would, without discharge of the jury, result in the defeat of justice. It is clear that the first reason fixed in the statute is no more nor less than the common law provided in like descriptive language; and hence counsel for the appellant assert a sound legal proposition when they insist upon the direct authority of *Ned's Case* that the statute (section 7314), in the particular that it provides for discharge for "manifest necessity," does not warrant or justify the discharge of a jury because it cannot or will not agree. *Ned's Case, supra.* As appears, however, from the statute (section 7314), juries may be discharged against the objection

of, and without advantage to, the accused, "when the ends of justice would otherwise be defeated." No attempt need be made to enumerate what conditions would come within this alternative reason of the statute. That it has a field of operation apart from the provision for discharge of juries in cases of "manifest necessity" must be assumed. Doubtless such a case would be made where, without the prisoner's knowledge of, or participation in, the act, a juror was tampered with, after evidence submitted, or knowledge of the lack of proper qualification of a juror was brought to the court, after his selection as a juror, and after the trial had been entered upon and evidence given.—12 Cyc. p. 273. It follows that a plea of former jeopardy, in a case where the jury was by the court discharged against the prisoner's objection or without his consent to be immune from aptly grounded demurrer, must properly negative the existence of both the reasons the statute now prescribes. Such was the ruling in principle in *McCauley v. State,* 26 Ala. 135, 144. By Code § 7314, it is provided: "In all cases in which the jury is discharged without a verdict, a mistrial shall be entered upon the minutes of the court, assigning the reason or cause for the mistrial," etc.

Before the adoption of the statute cited, it was ruled in *Storr's Case,* 129 Ala. 101, 29 South. 778, that, while it was necessary in pleas of autrefois acquit that the indictment should be set out, it was not necessary to set out the previous order or judgment of the court discharging the accused. In the early decision of *Henry v. State,* 33 Ala. 389, 403, it was said: "The pleas of autrefois acquit and autrefois convict consist partly of matters of record, and partly of matters of fact. They must set forth the former indictment, and the acquittal or conviction under it; and it seems to be essential that

the record thereof, or at least of the indictment, should be set out in full." The *Storr's Case, supra,* seems to be the first to have decided the want of necessity to set out in full the judgment of the court. In the state of the law existing at the time the decision in *Storr's Case* was delivered, then unaffected by the statute quoted, it may now be granted that its pronouncement in this particular was sound. The statute has imposed upon the courts entering mistrials the duty of engrossing upon the records of the court the reason therefor. The effect of the statute in this regard is, evidently, to constitute such entries, when made by the court as the statute commands, a part of the record, conclusive, unimpeachable, as is the case with other record expressions of judicial action. The condition so created by the operation and the effect of the statute in this particular must lead to the result that pleas of the class under consideration are faulty, as against aptly grounded demurrer, when the record of the mistrial relied on as the predicate for an acquittal is not set out in full therein. Whether a defendant's jeopardy was effected in a previous proceeding where a mistrial was entered must depend upon the reason for the discharge of the jury from consideration of the case. If the reason for the discharge of the jury is engrossed on the records of the court, it is clear under the statute that, in the absence of facts or acts generally operating the vitiation of records, the inquiry instituted by the plea can only be answered by the record, reciting the reason for the jury's discharge. It, of course, is the obligation of a pleader of former jeopardy to bring himself within the protection of that doctrine. *Baysinger v. State,* 77 Ala. 60. To do so, he must show by his plea that the action of the court wrought a mistrial, and the reason upon which the court acted to that end. These two facts—of

the essence of pleas invoking the protection of former jeopardy—are matters of record, and to it reference should be had to determine the reason as well as the fact of mistrial entered. If not so, a pleader of former jeopardy, where mistrial was the result, would substitute his conclusion from the record for the record itself. And, if he might so conclude without reference to the reason actuating the court and engrossed on the minutes of the court, the consequence must be that the prosecution would be put to a replication setting up the reason on which the court entered a mistrial. That proceeding would, as clearly appears, subvert the rule that "the averments of the plea must be such as show that the defendant is entitled to the protection invoked."— *Baysinger v. State, supra.*

None of the pleas set forth the "minutes of the court, assigning the reason or cause for the mistrial," nor is it averred therein that no entry on the minutes of the reason or for the mistrial was made in the court ordering the mistrial. The pleas were therefore defective.

In the prevailing opinion it is ruled that the court or judge has a discretion conferred in the premises upon it or him by the statute.—Code, § 7314. Such an interpretation of the statute renders it in my opinion, as before stated, violative of the Constitution, in that it would delegate to the court or judge a power committed exclusively to the Legislature to fix the reasons for the discharge of juries. Reference to the discussion on the thirty-ninth day of the convention framing the present Constitution of this section will discover that it was the particular concern of those formulating this feature of the instrument to avoid just that result. One of the obvious consequences thereof is to repose in courts and judges a discretion, as the majority rule. When the matter of a jury's discharge is rested in such discretion,

[Andrews v. The State.]

it is apparent that what is "manifest necessity" or "when the ends of justice would be otherwise defeated" must infinitely vary in the judicial minds invoked in the premises. The constitutional right involved becomes a mere shadow, for no such right can exist in fact if the availability of it to him so entitled is made to depend upon discretion of any character. This is in my opinion demonstrated when reference is had to appellate revision of the propriety of the exercise of a discretion in a given case. In this State two characters of discretion are recognized, viz., pure discretion, which is irrevisable, and legal discretion, which is revisable, but for abuse only. If the discretion now sanctioned is treated as of the latter kind, it is easily discernible that abuse of it must be for all practical purposes incapable of real presentation to the appellate tribunals; but, if it may be shown or necessarily inferred from facts shown, an extreme case must be presented, else the revisory tribunals will leave the result as the discretion exercised establishes it. If the Legislature has not met the obligation imposed upon it by section 9 of the Constitution, it is no part of the judicial function to supply the legislative omission. Better far that failure, temporary though it must be, attend legislative effort, than that so important a constitutional protection should suffer such qualification as to, for practical purposes, denude the major right of its substance.

If I may now set down a hope for definite future action in this important particular, I think I may with propriety suggest that what the Legislature should have done with respect to the discharge without the prisoner's consent of juries unable to agree was this: To provide that such action might be taken whenever the jury has had a reasonable period in which to deliberate upon their verdict. "Reasonable" has a definite signification

in our law; and presents a purely legal question when the facts are undisputed, as must and will be the case in all instances of the class under consideration.

MAYFIELD, J.—It is not disputed that appellant has been twice tried in the same court for the same capital felony.

It appears from the record beyond any reasonable doubt that on the second trial the court declined to allow the prisoner to plead the former jeopardy. Within the time allowed, and in the manner and form prescribed by law, the prisoner interposed seven separate pleas setting up the former jeopardy. The trial court sustained demurrers to each of these pleas, and put defendant upon a second trial on his plea of not guilty. The trial court acted upon the theory that the jury on the first trial had been discharged by the court before verdict found, for the reason and in the mode prescribed by section 7314 of the Code, and in accordance with section 9 of the Constitution; and this was the end of the matter, and that a plea of former jeopardy was not applicable or appropriate in such case.

This court sustains the action of the trial court in requiring the accused to undergo two trials for the same offense, and to be thus twice put in jeopardy of his life, upon a theory which I do not think is a correct one. It certainly has no precedent. It is one which I think is exceedingly dangerous, and which without doubt breaks down the established rules of criminal procedure and practice which have always prevailed in this State and at common law, and in all other States, so far as the books show. This court says that the pleas should have contained certain allegations which they did not contain, in order to negative a proper discharge of the first jury without a verdict; and that the pleas were

not sufficient, because the proviso of section 9 of the Bill of Rights and section 7574 of the Code had changed the law upon this subject. It is serious matter for a trial court to suffer a prisoner to be twice tried for a capital offense in the same court, and especially when the record of that selfsame court conclusively shows that he was tried twice. If a court can thus without the prisoner's consent and over his protest try him twice, it can for the same reason try him three times, or any number of times, until he is convicted, and such punishment is inflicted by the jury as meets the approbation of the court. The law does not contemplate, and it should not tolerate, any such practice. Yet this record affirmatively and conclusively shows that this prisoner was so tried twice in the same court for the same offense over his timely, appropriate, and most earnest protest. The record shows that he made seven appeals to the court to allow him to be heard, in order to show that he had theretofore been once tried for the same offense. There was conclusive record evidence of the truth of every material allegation of the pleas, and of every essential element of the defense of former jeopardy, except the identity of the accused; and that he offered in the pleas to prove, if the court needed any proof as to this fact; this evidence right at hand being a part of the record of that very court which was proceeding to try him a second time, and not only this, but a part of the record of the particular case then on trial.

The only possible justification of such a proceeding is that under our present law a prisoner is never in jeopardy if the court, for any cause, discharge the jury after it is charged with the deliverance of the accused. I think it perfectly evident that the trial court acted upon the theory that the last clause of section 9 of the Constitution as amended and section 7314 of the Code

of 1907, both of which are new, had wrought the change in our law to make it like that which is declared by the federal courts and by some state courts; that is, that, in order for a person to have been once in jeopardy, there must have been a verdict, that, if the jury was discharged without a verdict, no matter for what cause, then the prisoner was not in jeopardy of his life or limb within the meaning of the Constitution. The court, however, places its affirmance upon the ground that each of the seven pleas was insufficient, in that it failed to negative the correctness or propriety of the discharge of the jury, and the entry of "a mistrial upon the minutes of the court, assigning the reason or cause for the mistrial." The decision in this case properly holds that the law in this State is now unchanged, to the effect that a prisoner may be in jeopardy before verdict, and that the jury cannot be discharged before verdict except for causes or reasons sanctioned by law, and that the discharge is not discretionary with the trial court.

The part of the opinion to which I cannot agree is expressed as follows: "The jeopardy relied upon was the unauthorized discharge of the jury. Therefore the pleas should have set up the order of discharge, or else averred that no order was entered upon the minutes, and, failing to contain this material and important averment, they were subject to the State's demurrer. While form 7, p. 843, 3 Code 1907, is made sufficient, an examination of same will disclose that the last blank contemplated that it be filled with the matters and facts constituting a bar to a subsequent prosecution, and the defendant should, therefore, set out an order improperly made or aver that no legal or valid order was made." I cannot agree that "the jeopardy relied upon was the unauthorized discharge of the jury." The very reverse of that, I think, is true. It was the State that relied

upon the discharge of the jury as an answer to the plea of jeopardy. The prisoner was in jeopardy before, and when, the jury was discharged. It was not the discharge of the jury, right or wrong, that constituted the jeopardy. If the discharge was authorized by law, and the entry of mistrial was made on the minutes of the court, with the reason or cause for the mistrial assigned, and the reason was any one of the numerous ones authorized by law, then it was an answer to his pleas, and, as the Constitution provides, the prisoner could not gain an advantage by reason of such discharge of the jury." It was not intended by the Constitution makers or the Legislature to say—and it is not so provided in the Constitution or in statutes—that there was no jeopardy if the jury was discharged; but I think they intended to say, and did say, that, notwithstanding the prisoner was in jeopardy when the jury was discharged, he can take no advantage of the former jeopardy, if the jury was "discharged for reasons fixed by law," and those reasons or even one of them is entered of record upon the minutes of the court. In other words, that a plea of former jeopardy is unavailing to a defendant when the jury was discharged under those conditions; and, if they obtained, then the State may allege and show this as a complete answer to his plea, which would otherwise entitle the defendant to his discharge. Moreover, it is never deemed necessary nor even proper for pleas in a criminal case (even pleas in abatement or other dilatory pleas, much less pleas of absolute bar like this, which assert one of the highest constitutional rights) to set out matters which appear of record and are necessarily of record in the particular case. The court, of course, has knowledge of its own record in that particular case. Anything the plea could say truly, as to the minute entries, would convey no information to

the court nor the solicitor. The record speaks for itself, and is in no need of allegation or proof as to the particular case on trial, no matter what the plea alleges as to this record. While, of course, I know that the "contemplation" of the code commissioner does not, and ought not to, control this court in its interpretation of this form of plea or of the statute (section 7574 of the Code), yet, as it happens that the writer is, for the reason given, probably more responsible for this provision than any one else, he has thought proper in this connection to make this explanation. The purpose and effect of the new constitutional and statutory provisions referred to by the court were not at all to define jeopardy, nor to prescribe as to the form or sufficiency of a plea of former jeopardy; but the purpose and effect were to prescribe certain conditions or contingencies, and those only, in which the plea of former jeopardy should be unavailing. In other words, the Constitution and statutes together prescribe the matters and the only matters which may be made as answers to the plea by a replication, and also prescribe how such matters must be evidenced by being entered upon the minutes of the court.

The court holds as to the Code form for a plea of former jeopardy that "an examination of same will disclose that the last blank contemplated that it be filled with the matters and facts constituting a bar to a subsequent prosecution, and that the defendant should, therefore, set out an order improperly made, or aver that no legal or valid order was made." I cannot agree that an examination of the form will disclose any such purpose or intention. However unfortunate it may be for the State or for the defendant, it happens that the writer of this opinion, as code commissioner, is responsible for the appearance of both the form of the plea referred to and the statute which the court says the plea

should conform to. This form for the plea was prepared by the commissioner, and it appears exactly as he prepared it. He also drafted section 7314 of the Code, and, with a slight revision by the code committee, it and the form were adopted by the Legislature. The commissioner is very sure that he never "contemplated" that the last blank left by him should be filled in with "an order improperly made or aver that no legal or valid order was made;" nor did he ever suppose, when he prepared section 7314 of the Code, that he was requiring this matter to be set out in a plea of former jeopardy, but, on the other hand, he supposed that he was merely declaring general grounds for the discharge of a jury, such as had always existed, without attempting to enumerate all of them, and requiring the judge or court to specify the particular reason or ground for the discharge, and providing that it be made matter of record by being entered upon the minutes of the court. It has been repeatedly decided that it would be impossible for any one to enumerate all the grounds or reasons that have in the past, or may in the future, constitute a sufficient cause for discharging a jury. These various grounds, however many they may be, are or must be embraced within the phrase "manifest necessity," or such as that "the ends of justice would otherwise be defeated." These are substantially the forms in which the courts and law book writers have expressed the "necessity" or kind of necessity which will authorize the discharge of a jury.

If the law of this State were like the law of the United States and that of several other States, then I would concede that the pleas in this case were not sufficient; but the law of this State and of most of the States of the Union is different from that of the United States and of those States following the decision of the United

States Supreme Court upon this subject. This differ-
ence has been frequently pointed out by this court; by
the Supreme Court of the United States, and by the
text-writers. The Supreme Court of the United States
holds that the prisoner is never in jeopardy until a ver-
dict of some kind is rendered, and that it is largely, if
not wholly, a question of discretion in the trial court as
to when a jury may be discharged without a verdict;
but our court and the other line of cases hold that the
jury can be properly discharged only in cases of neces-
sity, which are fixed by law. It does not mean absolute
or dire necessity, nor does it mean merely the cases
named in the statute. The common law of a State is as
much the law as its statute law, until it is changed by
statute. As has been well and truly said: "The common
law is the statute law worn out by age." If a plea of
former jeopardy is required to negative some of the
specific grounds or reasons for the discharge of the jury,
it should negative all. As the courts and the text-writ-
ers have often remarked, this is impossible from the very
nature of the subject. It is usually, if not always, some
unforeseen event, some casualty the exact character of
which cannot be anticipated, much less defined. Conse-
quently the law writers and the opinions of the courts
say they cannot be so defined or anticipated as to be
comprehended in the text-books, in forms of pleading,
or in the pleas. It is for this reason that our statute
requires the judge to specify and name the cause or rea-
son which arose during, or after the trial, that justified
him or impelled him to discharge the jury, and to make
a record of it. How could a defendant in jail or in the
custody of the sheriff know what casualty or accident
happening to the court, to the solicitor, or to either of
the 12 jurors, or the family of either, would justify the
discharge? All that he can do, or is expected to do, is

[Andrews v. The State.]

to deny that there was a necessity for the discharge; and this the pleas in this case did. If there existed any one of the many reasons or causes which created the necessity, this would be an answer to the plea, and should set up in the replication.

Discharge of the jury before verdict during the term of the court is presumed to be error; and, if there are any facts or matters which cure or rebut the error, they ought to be shown by the state, instead of the defendant's being required to negative every possible cause or reason which would justify the discharge. I do not think that it has ever been the rule in this state to hold defendants in criminal proceedings to that high degree of strictness in pleadings which this defendant is held to in this case. Pleas exactly like these have been held sufficient by many courts, and they conform to every requirement laid down by the text-writers upon the subject, besides following both the common-law and the statutory forms prescribed by such pleas. I do not think that a court ought to deny a prisoner the opportunity of asserting, as a defense, a right given him by the Constitution merely because of the form of his plea. It was said by a great judge (often quoted in the opinions of this court) that courts are so far of counsel for defendants in capital cases that they should not allow the accused to waive or lose by ignorance or oversight his constitutional rights and privileges. Courts should see to it that persons charged of capital offenses shall have their defense properly presented to the court and jury, so that they may be duly passed upon. It is not the policy of our court to hold them to strict rules of special pleading, as was done with the defendant in this case. A rule of court or of pleading or practice which would deprive an accused person of the opportunity of asserting his constitutional rights is as much to be con-

demned, avoided, or relieved against as would be a
statute or any other proposed law which would have
that effect. Courts, as well as Legislatures, ought to
be bound by the Constitution.

I think the construction placed on the Constitution,
on the statute, and on the plea in this case is wrong;
and I believe that the authorities hereinafter referred
to show beyond doubt that it is wrong. In order that
this may clearly appear, I will cite authorities to show
what the ancient common law of England was upon the
subject, what that of the United States is, and what has
always been held to be, the law in this state. At an-
cient common law nothing would authorize the dis-
charge of a jury without verdict. A verdict was co-
erced by punishing the jury if they did not otherwise
agree. In the federal courts, the juries can be dis-
charged almost at the pleasure of the judge, and jeop-
ardy is not held to have begun until there is a verdict.
In this state, from the beginning till now, a discharge
was authorized in cases of manifest necessity, and when
justice would otherwise be defeated, but it was not a
matter of discretion with the judge. He could do so
only for reasons fixed by law, statutory or common, of
this state. The trial judge, however, was never the sole
and final judge of what would constitute the necessity
or prevent justice. This the court in this case (as I un-
derstand the opinion) holds the law now to be. If so,
then the pleas in this case (or some of them—I admit
some are bad) are good, and, the demurrer admitting
the facts stated in the plea as to which there could be
no doubt, then the court of necessity erred in sustain-
ing the demurrer.

My Brothers wholly misconceive the purpose, object
and effect of section 7314 of the Code. It fixes no defi-
nite or specific cause or reason which will authorize the

discharge of a jury before verdict. It uses only general terms, such as "manifest necessity," and "to prevent justice," which have always been grounds for discharge; but it does require the judge to enter of record the specific cause or reason authorizing the discharge. This is the only change wrought, or intended to be wrought, by the statute. My Brothers seem to think that this statute enumerates or fixes specific grounds for the discharge of the jury. It does not do so nor attempt to do so further than to say it may be done for "manifest necessity," and "to defeat or prevent injustice." This was always the law in this state. There are other sections of the Code, however, which do name a specific or definite cause which would authorize a discharge. Section 7311 provides for the discharge of a sick juror, for filling his place, and for commencing the trial anew. Section 7312 provides for the discharge of the whole panel on account of the sickness of one juror, or for any other cause which would prevent their being kept together. One specified and a general one which may cover hundreds of particular ones are embraced in section 7314. Section 7313 provides for discharge on account of adjournment of court. But all these provisions, including those of section 7314, are, and ever have been since they first appeared in the Penal Code of 1866, merely declaratory of the common law.

In the case of *Commmonwealth v. Holley*, 3 Gray (Mass.) 459, Bishop, J., speaking on the subject, said: "The object of the Declaration of Rights was to secure substantial privileges and benefits to parties criminally charged, not to require particular forms, except where they are necessary to the purpose of justice and fair dealing towards persons accused, so as to ensure a full and fair trial." To constitute jeopardy in the sense

[Andrews v. The State.]

used and attempted to be set up by these pleas, it is not necessary that there should be an actual conviction or acquittal. The prisoner is put in jeopardy, in a legal sense, when he is put upon trial on a good indictment, is arraigned, pleads not guilty, or the plea of not guilty has been entered for him by the court, and a lawful jury is duly impaneled and sworn and charged with his deliverance. When this is done, the prisoner is entitled to have a verdict returned by that jury, and this right cannot be disregarded by the court, unless in cases of manifest necessity, or when the ends of justice would otherwise be defeated. This has been repeatedly held by this court, and, as I understand it, by most all of the courts in England and America. It is the purpose and object of a plea of former jeopardy to set forth these facts which constitute former jeopardy, and to allege generally that the jury was discharged without the consent of the defendant, or without manifest necessity. While the plea must, of course, allege that the discharge was without the consent of the prisoner, and without necessity, it is not necessary for the plea to negative every possible case or instance which may constitute the necessity, or which may authorize the discharge in the particular case. This is true for the good and sufficient reason that it would be as impossible for a plea to do this as it would be for the prisoner to know or enumerate what reasons the court had for its action, or what circumstances existed making the discharge necessary to prevent a defeat of justice. This is matter for replication to the plea, and not for the plea to negative.

Section 9 of the Bill of Rights, and sections 7310-7314 of the Code, at most, merely provide certain reasons which may justify the court in discharging the jury, and which, if set forth in a replication, would be

a good answer to the plea. These sections do not profess to mention all the grounds or cases which would constitute "manifest necessity," or which would justify the court in discharging the jury without a verdict. There are now, and have always been, other and additional common-law grounds which would justify the court in discharging the jury. It has ever been the practice in this state, so far as I am informed, to set up by replication these special reasons, which would justify the discharge before verdict. They are exceptions to the general rule, and therefore proper matter for special replication to the plea of former jeopardy; in fact, all these Code provisions relate to matters which can and should be set up in a replication, and none of them purport to set forth or to require what should be stated in the plea of former jeopardy. If the ruling of the trial court in this case is correct, then a plea of former jeopardy must negative the illness of the trial judge, the illness of each of the jurors and of the prisoner, the escape of the prisoner, the adjournment of court, the illness of the solicitor or of the prosecuting attorney, the corruption or other misconduct of the jury, and many other grounds too numerous to mention. In short, the ruling in this case is to the effect for all practical purposes that it is impossible for the prisoner to formulate a sufficient plea of former jeopardy; for it will appear from an examination of some of these pleas that they contain all the matter mentioned in any of the forms for pleas of former jeopardy at common law, or by statute; and, if the ruling of the trial court on this question is correct in holding all these pleas insufficient, then I must confess my inability to dictate, to draw, or to formulate a plea of former jeopardy, even with the aid of all forms available. It is evidently a departure in the practice and procedure in criminal

[Andrews v. The State.]

cases, one which appears to me unwarranted, and one, the necessary effect of which is to deny prisoners the right to make effective the constitutional guaranty against being twice put in jeopardy. "Our Constitution guarantees the right of trial by jury 'in all criminal prosecutions'. (for misdemeanors as well as for capital offenses). This right must remain inviolate. New and arbitrary methods of arresting trials in criminal cases, even in misdemeanors, cannot be tolerated. 'These inroads upon this sacred bulwark of the nation are fundamentally opposite to the spirit of our Constitution; and, though begun in trifles, the precedent may gradually increase and spread, to the utter disuse of juries in questions of the most momentous concern.' " —4 Bl. Com. 350; *McCauley's Case*, 26 Ala. 143, 144. "Our opinion is that in this state any discharge of a jury which would protect a person indicted for a capital offense from a subsequent trial will work the same result in favor of a person indicted for a misdemeanor; that, in this respect, there is no middle ground—no difference between a capital case and a case of misdemeanor, as the Constitution guarantees the right of trial by jury 'in all criminal prosecutions'—that any unauthorized discharge of a jury in any criminal case is equivalent to an acquittal; that the court possesses the power to discharge a jury in cases of necessity, or when the prisoner consents to it, but in no other cases; that the discharge of a jury without the consent of the prisoner, and without a necessity for the discharge, is unauthorized; that the sudden illness of a juror, or of the prisoner, so that the trial cannot proceed, are ascertained cases of necessity, and serve as examples to show what the law means by a case of necessity."— *McCauley v. State*, 26 Ala. 144. By the ancient common law jurors were kept together as prisoners of the

court, until they had agreed upon their verdict.—
Thompson & M. Juries, § 310. It was regarded as, not
only proper, but requisite, that they should be coerced
to an agreement upon a verdict.—Proffatt, Jury Trial,
§ 475. "And it has been held that, if the jurors do not
agree in their verdict before the judges are about to
leave town, * * * the judges are not bound to wait
for them, but may carry them to town. * * * in a
cart." Mr. Emlyn, in his preface to the second edition
of the State Trials, printed in 1730, says: "The law re-
quires that the twelve men, of which the jury consists,
shall all agree before they give a verdict; if they don't
all agree, they must undergo a greater punishment than
the criminal himself; they are to be confined in one
room without meat, etc., until they are starved." Kent,
J., said: "The doctrine of compelling a jury to unanim-
ity by the pains of hunger and fatigue, so that the ver-
dict in fact be founded not on temperate discussion and
clear conviction, but on strength of body, is a mon-
strous doctrine that does not * * * stand with
conscience, but is altogether repugnant to a sense of
humanity and justice. A verdict of acquittal or con-
viction obtained under such circumstances can never re-
ceive the sanction of public opinion. And the practice
of former times of sending the jury carts from one as-
size to another is properly controlled by the improved
manners and sentiments of the present day."

In ascertaining the meaning of the phrase taken from
the Bill of Rights, it must be construed with reference
to the common law from which it was taken.—1 Kent,
Com. 336; *United States v. Wong Kim Ark,* 169 U. S.
649, 18 Sup. Ct. 456, 42 L. Ed. 890, in which the court
said: "In this, as in other respects, it (a constitutional
provision) must be interpreted in the light of the com-
mon law, the principles and history of which were fa-

miliarly known to the framers of the Constitution.—
*Minor v. Happersett,* 21 Wall, 162 [22 L. Ed. 627] ; *Ex
parte Wilson,* 114 U. S. 417 [5 Sup. Ct. 935, 29 L. Ed.
89] ; *Boyd v. U. S.,* 116 U. S. 616, 624 [6 Sup. Ct. 524,
29 L. Ed. 746] ; *Smith v. Alabama,* 124 U. S. 465 [8
Sup. Ct. 564, 31 L. Ed. 508]. The language of the Con-
stitution, as has been well said, could not be understood
without reference to the common law.—1 Kent's Com.
336 ; Bradley, J., in *Moore v. U. S.,* 91 U. S. 270, 274 [23
L. Ed. 346]." At common law protection from second
jeopardy for the same offense clearly included immu-
nity from second prosecution where the court having
jurisdiction had acquitted the accused of the offense.
The rule is thus stated by Hawkins in his Pleas of the
Crown, quoted by Mr. Justice Story in *U. S. v. Gilbert
et al.,* 2 Sumn. 19, 39, Fed. Cas. No. 15,205. "The plea
[says he] of autrefois acquit is grounded on this max-
im, that a man shall not be brought into danger of his
life for one and the same offense more than once. From
whence it is generally taken by all our books, as an un-
doubted consequence, that where a man is once found
not guilty, on an indictment or appeal, free from error,
and well commenced before any court, which hath ju-
risdiction of the cause, he may by the common law, in
all cases, plead acquittal in bar of any subsequent in-
dictment or appeal for the same crime." In that court
it was said by Mr. Justice Miller in *Ex parte Lange,* 18
Wall. 163, 21 L. Ed. 872 : "The common law not only
prohibited a second punishment for the same offense,
but went further, and forbid a second trial for the same
offense, whether the accused had suffered punishment
or not, and whether in the former trial he had been ac-
quitted or convicted." "It is true that some of the def-
initions given by the text-book writers, and found in the
reports, limit jeopardy to a second prosecution after

verdict by a jury; but the weight of authority, as well as decisions of this court, have sanctioned the rule that a person has been in jeopardy when he is regularly charged with a crime before a tribunal properly organized and competent to try him, certainly so after acquittal."—*Coleman v. Tennessee*, 97 U. S. 509, 24 L. Ed. 1118.

In *United States v. Sanges*, 14 U. S. 310, 12 Sup. Ct. 609, 36 L. Ed. 445, it was held that a writ of error did not lie in favor of the United States in a criminal case. Mr. Justice Gray said: "From the time of Lord Hale to that of *Chadwick's Case* * * * the text-books, with hardly an exception, either assume or assert that the defendant (or his representative) is the only party who can have either a new trial or a writ of error in a criminal case, and that a judgment in his favor is final and conclusive." Mr. Justice Gray also said in *U. S. v. Ball*, 163 U. S. 662, 16 Sup. Ct. 1192, 41 L. Ed. 300: "The Constitution of the United States in the fifth amendment declares, 'nor shall any person be subject to be twice put in jeopardy of life or limb.' The prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial. An acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense."—*Commonwealth v. Peters*, 12 Metc. (Mass.) 387; 2 Hawk. P. C. c. 35, § 3; 1 Bishop, Crim. L. § 1028. "It is the settled law of this court, then, that former jeopardy includes one who has been acquitted by a verdict, and it was found upon a defective indictment. The protection is not, as the court below held, against the peril of a second punishment, but

against being twice tried for the same offense."—
Kepner v. United States, 195 U. S. 130, 24 Sup. Ct. 797,
49 L. Ed. 114. Shaw, C. J., in Roby's Case, 12 Pick.
(Mass.) 502, speaking to the subject, says as follows:
"This plea of a former conviction, like that of a former
acquittal, is founded upon that great principle and fun-
damental maxim of criminal jurisprudence, that no
man shall be twice put in jeopardy for the same of-
fense. This is one of the ancient and well-established
principles of the common law, sanctioned and enforced,
in different forms of words, in most of the Constitu-
tions of the several states, and in that of the United
States. In the latter is thus expressed: 'Nor shall any
person be subject, for the same offence, to be twice put
in jeopardy of life and limb.' This is an ancient
phrase, known in the law; and without endeavoring to
seek for the history of its origin, in times when dismem-
berment was actually inflicted as a punishment for of-
fenses, it may now be taken to be an expression descrip-
tive of the class of punishment denounced by law
against those offenses coming under the denomination
of felony.—People v. Goodwin, 18 Johns. (N. Y.) 201
[9 Am. Dec. 202]. This clause in the Constitution,
then, may be considered equivalent to a declaration of
the common-law principle that no person shall be twice
tried for the same offense. But the application of the
maxim in each particular case, in which it is relied on
as a bar to further proceedings in a prosecution, re-
quires the consideration whether in fact the party
pleading has before been put in jeopardy, and, if so,
whether it can be said to be for the same offense. If
these circumstances do not concur, the maxim does not
apply to the case. Thus, where the court before the for-
mer trial took place had no jurisdiction of the offense,
the party cannot be deemed in law to have been put in

jeopardy, because no valid and binding judgment could have been rendered by such court. So, where the indictment was insufficient, in form or substance, and no judgment could be rendered upon it, because it is to be deemed as a nullity, wholly inoperative and void, and upon which no punishment can be awarded. So, after the jury is impaneled and charged with the prisoner, and progress made in the trial, if through the death or sudden sickness of a juror, the illness of the prisoner, or other case of urgent necessity the progress of the trial is interrupted, another jury may be impaneled, and the prisoner again put upon his trial. So it has been held in modern times, though it was long doubted, and these doubts were countenanced by some respectable authorities, that where the jury, after being long kept together, cannot agree, where it is manifest that they have no reasonable prospect of agreeing, and no means remain but famine or exhaustion to compel them to agree, or where the powers of the court are near terminating by the legal termination of their session, the court as a power necessarily incident to the due and regular administration of justice may discharge the jury without the consent of the prisoner, and again impanel a jury and put him upon his trial."

"The trial by jury is that trial by the peers of every Englishman, which, as the grand bulwark of his liberties, is secured to him by the great charter.  *  *  * The antiquity and excellence of this trial for the settling of civil property has before been explained at large. And it will hold much stronger in criminal cases; since, in times of difficulty and danger, more is to be apprehended from the violence and partiality of the judges appointed by the crown in suits between the king and the subject than in disputes between one individual and another to settle the metes and boundaries

[Andrews v. The State.]

of private property. Our law has therefore wisely placed this strong and two-fold barrier of a present-ment and a trial by jury between the liberties of the people and the prerogative of the crown."—4 Bl. Com. 349. The general rule as laid down by the highest au-thorities on the criminal law is that a jury once sworn and charged in a case affecting life or member cannot be discharged without giving verdict. Among the ex-ceptions to this rule is this: That a court may dis-charge a jury in any case of pressing necessity, and should do so whenever such a case is made to appear.—
*Powell v. State,* 19 Ala. 577. The sudden illness of a juror, or of the prisoner, so that the trial cannot pro-ceed, is among ascertained cases of necessity, and serves as an example to show what the law means by a case of necessity.—*McCauley v. State,* 26 Ala. 135.

In the *McCauley Case,* 26 Ala. 138, in speaking of the decisions of this and other courts upon the subject of former jeopardy, it was said: "Every decision of this kind rests upon this solid ground that such decision is essential to preserve inviolate to the prisoner the right of trial by jury as guaranteed by the Constitution. This right cannot mean less than a right to have the de-liberations of the jury, when once they have begun the trial and heard the evidence, continued until the occur-rence of a sufficient legal reason for their discharge, and the right to have during the entire period of such con-tinuance the chance of a verdict of acquittal at the hands of that jury. It is impossible for any judge to say that the jury would not have acquitted him. It is equally impossible for any judge to say he can get an-other jury who will acquit him. The law does say, if any jury ever does acquit him, their verdict shall not be set aside by any court, however unwarranted by the law and the evidence in the case that verdict may be.

4—174

The chance of a verdict of acquittal at the hands of each jury to whom the cause and any evidence have been submitted is obviously important to a prisoner, and is clearly embraced in the guaranty of trial by jury. To deprive the prisoner of this chance by the lawless act of the court in discharging the jury is a flagrant wrong, for which there is no remedy, except to treat such deprivation as equivalent to an acquitttal. To hold that there is no remedy for such a wrong is to hold that the right of trial by jury has ceased to be a right; for if, by such lawless act of the court, one jury may be discharged, an indefinite number may be discharged in the same manner." It was said by this court in the case of *Hawes v. State,* 88 Ala. 61, 7 South. 310, as follows: ".In this country there are two distinct lines of authority on the question. The Supreme Court of the United States, and of several states, hold that the discharge of the jury rests largely in the unrevisable discretion of the trial court.—*U. S. v. Perez,* 9 Wheat. 579 [6 L. Ed. 165] ; *People v. Olcott,* 2 Johns. Cas. [N. Y.] 301 [1 Am. Dec. 168] ; *Commonwealth v. Purchase,* 2 Pick. [Mass.] 521 [13 Am. Dec. 452]. The courts of last resort of other states, and among them Alabama, hold that the exercise of the power to discharge a jury is not a matter of unbridled discretion in the primary court, but that its action in that behalf is always open to review on appeal or writ of error.—*Commonwealth v. Cook,* 6 Serg. & R. (Pa.) 577 [9 Am. Dec. 465] ; *Mahala v. State,* 10 Yerg. (Tenn.) 533 [31 Am. Dec. 591] ; *Lee v. State,* 26 Ark. 261 [7 Am. Rep. 611] ; *State v. Ephraim,* 19 N. C. 162; *Ned v. State,* 7 Port. 189; *Mixon v. State,* 55 Ala. 129 [28 Am .Rep. 695] ; *Cook v. State,* 60 Ala. 39 [31 Am. Rep. 31]. In these jurisdictions the discharge of a jury without verdict and before the close of the court, or at least before impossibility

of an agreement has been reasonably demonstrated, acquits the defendant, unless something has occurred after jury sworn which in legal contemplation necessitates the withdrawal of the case. The facts presenting such necessity, recognized by all courts as authorizing the discharge of the jury are the sickness of the judge (*Nugent's Case*, 4 Stew. & P. 72 [24 Am. Dec. 746], or sickness of a juror (*Fletcher's Case*, 6 Humph. [Tenn.] 249; *Rex r. Edwards*, 4 Taunt. 309; *Hector v. State*, 2 Mo. 166 [22 Am. Dec. 454]), or of the prisoner (*Brown's Case*, 38 Tex. 482; *State v. Wiseman*, 68 N. C. 203; *Lee's Case*, 26 Ark. 260 [7 Am. Rep. 611]), or the escape of a juror from his fellows (*State v. Hall*, 9 N. J. Law, 256; *Reg. v. Ward*, 10 Cox, C. C., 573), or the escape of the prisoner (*Battle v. State*, 7 Ala. 259); and, it would seem, the sudden illness of the solicitor, unless he have assistants or associates who can proceed with the case (*U. S. v. Watson*, 3 Ben. 1 [Fed. Cas. No. 16,651]). In this state the broad doctrine of necessity has been thoroughly established, and it may be considered as settled law that whenever from any cause, whether those enumerated above or any other, the court is unable to proceed with the trial, and the jury with its deliberations, and such cause supervenes pending trial, and is of a nature not to be foreseen, and cannot be removed, the court is authorized to discharge the jury, and hold the prisoner for further trial."

Story, J., speaking on this subject in the case of *U. S. v. Perez*, 9 Wheat. 579, 6 L. Ed. 165, said: "The question therefore arises whether the discharge of the jury by the court from giving any verdict upon the indictment with which they were charged without the consent of the prisoner is a bar to any future trial for the same offense. If it be so, then he is entitled to be discharged from custody; if not, then he ought to be held

[Andrews v. The State.]

in imprisonment until such trial can be had. We are of opinion that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, and for very plain and obvious causes; and in capital cases courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion rests, in this as in other cases, upon the responsibility of the judges, under their oaths of office. We are aware that there is some diversity of opinion and practice on this subject in American courts; but, after weighing the question with due deliberation, we are of opinion that such a discharge constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put upon trial. A certificate is to be directed to the circuit court, in conformity to this opinion."